STATE EX REL. STUEWE, APPELLANT, *v.* HINDSON ET AL., RESPONDENTS.

(No. 3,090.)

(Submitted December 18, 1911.   Decided January 11, 1912.)

[120 Pac. 485.]

*Public Contracts — Fraud—County Commissioners—Care of Poor—Bidders—Rights—Parties Beneficially Interested—Rejection of Bids—Implied Authority—Duration of Contract—Mandamus—Pleadings—Estoppel.*

*Mandamus*—Public Contracts—County Commissioners—Discretion.
  1.   *Mandamus* does not lie to control the discretion lodged in a board of county commissioners in the matter of awarding a public contract; where, however, fraud has entered into the proceeding, the writ is available to compel the board to act, since, under such circumstances, discretion cannot be said to have been exercised.

Same—Unsuccessful Bidders—Not Parties Beneficially Interested.
  2.   An unsuccessful bidder may not, as such, invoke the aid of *mandamus* to compel a public board to accept his offer; his bid not having ripened into a contract, he is not deemed a party beneficially interested and hence has no standing in court.

County Commissioners — Public Contracts — Lowest Bidder — Purpose of Statute.
  3.   The provision of law for letting a contract such as that for the care of the county poor to the lowest bidder is for the benefit of the public and does not confer any right upon the lowest bidder as such.

Same—Public Contracts—*Mandamus*—Rights of Taxpayers.
  4.   An unsuccessful bidder, who was also a resident taxpayer of the county, the board of commissioners of which he sought to compel by *mandamus* to rescind a contract for the care of the poor on the ground of fraud, and who alleged in his complaint that if the contract was carried out the taxpayers would suffer financial loss, was a party beneficially interested as a taxpayer, and could properly invoke the aid of the court in that behalf.

Same—Rejection of Bids—Estoppel.
  5.   *Quaere:* Is one who submits a bid for public work, in response to a notice calling therefor which expressly reserves the right in a board to reject all bids, estopped to deny authority in the board to do so?

Same—Care of County Poor—Rejection of Bids—Implied Authority.
   6. *Held*, that, taking into consideration the various provisions of the Codes relating to the matter, the board of county commissioners has the implied authority to reject all bids made for the care of the county poor, and may, if the situation warrants it, advertise for new bids.

Same—Duration of Contract—Statutes.
   7. Under section 2054, Revised Codes, as amended by Laws of 1909, page 34, when read in connection with section 2055, as amended by Laws of 1911, page 78, the board of county commissioners may not let a contract for the care of the county poor for a period longer than one year.

Statutory Construction.
   8. A thing which is within the intention of the legislature is as much within the statute as if it were within its letter.

Public Contracts—Fraud—Effect.
   9. A municipal contract vitiated by fraud is a nullity.

*Mandamus*—Pleadings.
   10. In proceedings in *mandamus* where the alternative writ refers to the affidavit of relator, the two are treated as interdependent and constitute his first pleading.

Same—Sufficiency of Pleadings—How Tested.
   11. The rules of pleading in ordinary civil actions are applicable to test the sufficiency of the first pleading in *mandamus*.

Same—Motion to Quash—When not to be Granted.
   12. The motion to quash bears the same relation to the first pleading in *mandamus* that a general demurrer does to the complaint in an ordinary action; hence the rule that a general demurrer cannot be sustained if the complaint states facts sufficient to entitle plaintiff to *any* relief whatever is, under paragraph 11 above, applicable to such motion.

Public Contracts—Fraud—*Mandamus*—Power of Supreme Court.
   13. In an action for *mandamus* to compel the rescission of a county contract because of fraud, which was admitted by the filing of a demurrer, the supreme court may, where it appears that the public is the real party in interest and entitled to some remedy, grant such relief as it deems proper, irrespective of the wishes of the nominal parties.

Same—Power of Boards—Presumptions.
   14. One contracting with a public board does so at his peril; he is presumed to know the limit of its authority.

   (MR. CHIEF JUSTICE BRANTLY dissenting.)

*Appeal from District Court, Lewis and Clark County; Llew. L. Callaway, a Judge of the Fifth Judicial District, presiding.*

MANDAMUS by the state, on the relation of William Stuewe, against J. J. Hindson and others, as the board of county commissioners of Lewis and Clark county. Judgment dismissing the proceeding, and relator appeals. Reversed and remanded.

*Messrs. C. A. Spaulding,* and *Homer G. Murphy,* submitted a brief in behalf of Appellant; *Mr. Spaulding* argued the cause orally.

It may be conceded that the general rule, both in this jurisdiction and elsewhere, is that *mandamus* will not lie to control discretion if exercised honestly and in good faith.  Our supreme court has so declared in the case of *State ex rel. Eaves* v. *Rickards,* 16 Mont. 145; and with that declaration appellant has no quarrel.  But the case at bar does not fall within this rule. Here it is shown by the affidavit that the board of county commissioners of Lewis and Clark county, although clothed with discretion in and about awarding a contract for the care of the poor and indigent of said county, has failed to exercise such discretion, but instead has, in and about such award, acted in bad faith, contrary to the express provisions of the statute and for their own profit.  In such a case, and upon such a showing, the courts always afford relief by *mandamus.*  And the relief so afforded is founded upon the ground that so acting such board has not exercised the discretion with which the law has clothed it.  For this reason the writ lies and cannot be said to in any sense control or attempt to control discretion.  Probably the latest expression of this court on the matter is found in the case of *State ex rel. Robert Mitchell Furniture Co.* v. *Toole,* 26 Mont. 22, 91 Am. St. Rep. 386, 66 Pac. 496, 55 L. R. A. 644.

It has been held by almost a unanimity of decision that acting in bad faith, or otherwise arbitrarily and oppressively, is such an abuse of discretion, or failure to exercise discretion, that *mandamus* will lie.  (*State ex rel. Brown* v. *Board,* 38 Wash. 325, 80 Pac. 544; *Illinois Board* v. *People,* 123 Ill. 227, 13 N. E. 201; *State ex rel. Mauldin* v. *Matthews,* 81 S. C. 414, 128 Am. St. Rep. 919, 62 S. E. 695, 22 L. R. A., n. s., 735, 16 Am. & Eng. Ann. Cas. 182; also note, p. 184; *Virginia* v. *Rives,* 100 U. S. 323, 25 L. Ed. 671; *Wood* v. *Strother,* 76 Cal. 545, 9 Am. St. Rep. 249, 18 Pac. 766; *Raisch* v. *Board,* 81 Cal. 542, 22 Pac. 890; *Inglin* v. *Hoppin,* 156 Cal. 483, 105 Pac. 582; *Keller* v. *Hewitt,* 109 Cal. 146, 41 Pac. 871.)  Nor can it be said that the board was not satisfied that appellant was the lowest responsible bidder. If the fact existed, and the board knew of its existence, it was bound to be satisfied thereof and act accordingly.  (*Stockton R.*

*R. Co.* v. *City of Stockton,* 51 Cal. 328.)    The doctrine announced by the foregoing cases is not at all militated against by the case of *State Pub. Co.* v. *Smith,* 23 Mont. 44, 57 Pac. 449.    In that case the writ of mandate was sought to be invoked against the chief executive officer of the state, and this court held that the writ would lie against him when acting in a ministerial capacity only; that in all other matters of his conduct he could not be controlled by *mandamus* by reason of the fact that he is the head of a co-ordinate and separate constitutionally created branch of the state government.    And in passing it may be observed that this is the general rule.    The observations that if the governor was acting arbitrarily or wrongfully, the only forum in which he could be brought to account was in the consciences of the electorate, has no applicability whatever to boards of county commissioners, for the very sufficing reason that such boards are not, as is the governor, beyond the reach of *mandamus* except in matters purely ministerial in character.    (*State ex rel. Charleston C. & C. R. Co.* v. *Whitesides,* 30 S. C. 579, 9 South. 66, 3 L. R. A. 779, note.)

That appellant is "a party beneficially interested" to entitle him to maintain the action, see *Chumasero* v. *Potts,* 2 Mont. 242; *State ex rel. Bean* v. *Lyons,* 37 Mont. 354, 96 Pac. 922; *Santa Rosa Lighting Co.* v. *Woodward,* 119 Cal. 30, 50 Pac. 1025. Merrill on Mandamus, section 230, states the rule as follows: "The great weight of American authority is to the effect that, where the relief sought is a public matter, or a matter of public right, the people at large are the real party, and any citizen is entitled to a writ of *mandamus* to enforce the performance of such public duty," citing *Chumasero* v. *Potts, supra; State* v. *Gracey,* 11 Nev. 223; *State* v. *Francis,* 95 Mo. 44, 8 S. W. 1; *State* v. *Van Duyn,* 24 Neb. 586, 39 N. W. 612; *Union Pac. Ry.* v. *Hall,* 91 U. S. 343, 23 L. Ed. 428; *State* v. *Ware,* 13 Or. 380, 10 Pac. 885.    (See, also, *Frederick* v. *City of San Luis Obispo,* 118 Cal. 391, 50 Pac. 661.)

The respondent board has not performed the duty required of it by the express provisions of the statute; what it has so far

assumed to do, whatever it may be denominated, is assuredly no compliance with the mandatory provisions of the law. That it can be compelled by *mandamus* to perform this duty cannot admit of doubt, for it is "an act which the law specially enjoins as a duty resulting from an office, trust or station." (Rev. Codes, sec. 7214; see *People ex rel. Baird* v. *Broom,* 138 N. Y. 95, 33 N. E. 827, 20 L. R. A. 86, 87.)

In behalf of Respondents, there was a brief by *Mr. Albert J. Galen,* Attorney General, and *Mr. W. S. Towner,* Assistant Attorney General, and oral argument by the latter.

It may be conceded at the outset that it is a general rule that *mandamus* will not lie to control discretion if exercised honestly and in good faith, and we concede, with appellant, that where the action of the board in awarding a contract was fraudulent or exercised in bad faith, a writ will lie against such board to compel it to act. This upon the theory that the board so acting in fraud or collusion has not exercised the discretion which the law contemplates should be exercised; but we submit that there must be allegations of fact showing fraud or collusion on the part of the commissioners in order to bring the appellant within the general rule above announced, and we contend that the so-called allegations of fraud in appellant's affidavit or petition filed herein are mere conclusions and that said affidavit or petition does not set forth the facts constituting said alleged fraud. "The fact that the contract was not awarded to the lowest bidder does not of itself indicate fraud. The board was authorized to reject any bid, and there may have been a sufficient showing before it that none of the other bidders than the one to whom the contract was awarded was a responsible bidder." (*Peckham* v. *City of Watsonville,* 138 Cal. 242, 71 Pac. 169.)

It may be presumed that the official duties have been legally performed and that the law has been obeyed. (Rev. Codes, sec. 7962, subds. 15, 33.) If, then, there is sufficient allegation of facts constituting fraud or collusion on the part of the county commissioners in awarding the contract in question contained in

the affidavit or petition of appellant, respondents concede that a writ will lie to compel said board to reconvene and act and exercise its lawful discretion. If, however, the petition or affidavit of appellant does not state facts constituting the alleged fraud or collusion, then we contend that it will not lie to control the discretion of the board in awarding the contract. (Rev. Codes, secs. 7214, 2057; *State ex rel. Eaves* v. *Rickards,* 16 Mont. 145, 50 Am. St. Rep. 476, 40 Pac. 210, 28 L. R. A. 298; *State ex rel. Furniture Co.* v. *Toole,* 26 Mont. 22, 91 Am. St. Rep. 386, 66 Pac. 496, 55 L. R. A. 644; *State ex rel. Publishing Co.* v. *Smith,* 23 Mont. 44, 57 Pac. 449; *State ex rel. Publishing Co.* v. *Smith,* 23 Mont. 329, 58 Pac. 867.)

This court has held that the writ of *mandamus* may be used to coerce into activity, but it may not be used to control discretion or to correct errors. (*State ex rel. Anaconda C. M. Co.* v. *District Court,* 25 Mont. 505, 65 Pac. 1020.) The duties which the writ will compel must be ministerial. (*Montana Ore Pur. Co. Co.* v. *Lindsay,* 25 Mont. 24, 63 Pac. 715; *Hanlin* v. *Independent District,* 66 Iowa, 69, 23 N. W. 268.) "The refusal of the state furnishing board to award a contract to the lowest responsible bidder is merely erroneous, and not sufficient to justify the issuance of a writ of *mandamus.*" (*State ex rel. Furniture Co.* v. *Toole, supra;* see, also, *In re McCain,* 9 S. D. 57, 68 N. W. 163; *State ex rel. Journal Co.* v. *McGrath,* 91 Mo. 386, 3 S. W. 846.) In the absence of fraud or collusion *mandamus* will not lie at the instance of a bidder to control the exercise of discretion in relation to the letting of a public contract. (14 Current Law, 1475 (6); *Maryland Pav. Co.* v. *Mahool,* 110 Md. 397, 72 Atl. 833, 17 Ann. Cas. 649; *L. S. F. Co.* v. *Gast* (Ky.), 115 S. W. 761; *Nelson* v. *Mayor,* 131 N. Y. 4, 29 N. E. 814.) In determining who is the lowest responsible bidder the board has a wide discretion not controlled by the courts, except for arbitrary exercise, collusion or fraud. (28 Cyc. 1031; *Kelly* v. *Chicago,* 62 Ill. 279; *Hoole* v. *Kinkead,* 16 Nev. 217; *Anderson* v. *Board,* 122 Mo. 61, 27 S. W. 610, 26 L. R. A. 707; *I. V. B. & P. Co.* v. *Philadelphia,* 164 Pa. 477, 30 Atl. 383; *Clapton* v. *Taylor,* 49 Mo. App. 117.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On September 5, 1911, the board of county commissioners of Lewis and Clark county caused to be published a notice, calling for bids for the care of the poor sick and infirm of the county for the period of two years from October 15, 1911. The notice concluded as follows: "The right to reject any and all bids is expressly reserved." In answer to this notice, four bids were submitted, as follows: William Stuewe, $3 per capita per week; Jacob Doerr, $3.08 per capita per week; Bert Coty, $3.20 per capita per week; and William Holbrook, $3.25 per capita per week. On September 30, after the time for presenting bids had expired, the board, acting by its commissioners, Hindson and Dolliver (Commissioner Covington voting in the negative), awarded the contract to William Holbrook for two years at $3.25 per capita per week. William Stuewe, one of the unsuccessful bidders, instituted this proceeding in *mandamus* to compel the board to rescind and set aside the contract with Holbrook, and to award the contract to him. An alternative writ was issued, and upon the return the defendants demurred to the affidavit, and moved to quash the alternative writ. The demurrer and motion were sustained, and the proceedings dismissed. From the judgment of dismissal, the relator appealed.

There are but two questions before us for determination: (1) What is the status of the relator before the courts in this proceeding; and (2) to what extent may relief be granted?

The general rules of law governing the writ of *mandamus* are quite well settled, and counsel for appellant and the attorney general, appearing for the board, are in substantial agreement. Counsel for appellant in their brief epitomize the charges of fraud contained in the affidavit for the writ, as against Commissioners Hindson and Dolliver, as follows:

"That respondent board of county commissioners, acting by and through a majority of the members thereof, to-wit, J. J. Hindson and William M. Dolliver, and overriding the vote of C. C. Covington, the other member of said board, against the

same, on the 30th day of September, 1911, fraudulently, capriciously, arbitrarily, corruptly, and acting because of their interest in said contract, unlawfully assumed to award the same to the respondent William Holbrook, the highest bidder, notwithstanding said board well knew that appellant was the lowest responsible bidder therefor; that the respondent board so acted without determining or passing upon the responsibility of appellant, as such a bidder, and without affording him an opportunity to demonstrate, as he could have done, that he was in fact, and as they well knew, in every way the lowest responsible bidder; that the respondent Hindson was interested in the letting of said contract, and expected to, and would, as he had in the past, derive profit therefrom, if let to the respondent Holbrook, all of which he well knew when he voted to award the same to the latter.''

The demurrer admits the facts pleaded to be true, and for the purposes of this appeal they will be treated as true.

While *mandamus* will not lie to control the discretion of the board, these allegations disclose that the board has never exercised [1] its discretion with respect to the bids submitted, for the fraud vitiates the proceeding, and precludes the idea that discretion was exercised. Under such circumstances, *mandamus* is an available remedy to compel the board to act. (*State ex rel. Mitchell Furniture Co.* v. *Toole*, 26 Mont. 22, 91 Am. St. Rep. 386, 66 Pac. 496, 55 L. R. A. 644.)

1. If this relator showed by his affidavit that he is merely an [2] unsuccessful bidder, the remedy by *mandamus* would not be available to him. There was not any contractual relation existing between him and the board, and his status as an unsuccessful bidder does not make him a party beneficially interested. In general terms, it is said that a contract is consummated by an offer from one party and its acceptance by another. The advertisement for bids is not an offer which by acceptance constitutes a contract. It is merely an invitation to every bidder to make an offer, which the board may accept, and a contract result; but a party whose offer is not accepted cannot complain or invoke the

aid of the courts to compel the board to accept his offer.    (*Anderson* v. *Public Schools,* 122 Mo. 61, 27 S. W. 610, 26 L. R. A. 707.)

In *Commonwealth ex rel. Snyder & Co.* v. *Mitchell,* 82 Pa. 343, a case similar in the facts to the one before us is presented, except that in the Pennsylvania case there were no charges of fraud.   In answer to a notice by the city of Pittsburgh, calling for bids for certain public work, Snyder & Co., copartners, and Bush & Co., each submitted bids.   The bid of Snyder & Co. was lower than the other, but the contract was awarded to Bush & Co.   Snyder & Co. then brought proceedings in *mandamus* to compel the city authorities to let the·contract to them, upon the ground that they were the lowest responsible bidders.   In denying the relief sought, the court said: "It is a well-established rule that he who sues for the writ of *mandamus* must have some well-defined right to enforce, which is specific, complete, and legal, and for which there is no other specific legal remedy, and the right which he claims must be independent of that which he holds in common with the public at large.   (*Heffner* v. *Commonwealth,* 4 Casey, 108.)   But Snyder & Co. had no such right as above stated.   By their bid, they proposed to contract for certain work; that bid was not accepted.   It was a mere proposal that bound neither party, and as it never was consummated by a contract the city acquired no right against the relators, nor they against the city. Snyder & Co. are wanting in a specific remedy only because they have failed to establish a legal right.   The injury, if any, resulting from the rejection of their bid fell upon the public, and not upon them personally."

The provision of law for letting contracts of this character to [3]   the lowest bidder is for the benefit of the public, and does not confer any right upon the lowest bidder as such.   (*State ex rel. Phelan* v. *Board of Education,* 24 Wis. 683 ;·*Kelly* v. *Chicago,* 62 Ill. 279.)

But this relator goes further, and alleges that he is a resident taxpayer of Lewis and Clark county, and sets forth the facts which show that if the contract with Holbrook is carried out the taxpayers of the county will suffer financial loss.   Under such

[4]   circumstances, the authorities are quite uniform in holding that he is a party beneficially interested, and may invoke the aid of a court by *mandamus;* but in doing so he occupies the same position as would any other taxpayer who had not bid for the contract.   In other words, the only standing which Stuewe has in the courts in this proceeding is as a taxpayer, and not as an unsuccessful bidder.

We agree with counsel for appellant that under the showing made here this board has never acted upon the bids which were submitted to it, since its purported action was entirely vitiated by the fraud which is charged and admitted; in other words, the board is now in precisely the same position it was in on September 30, when it met to consider the bids, and before it attempted to act.

We agree, further, with counsel that the duty devolves upon the board to act; that the duty is absolute; and that, having failed to act, *mandamus* lies to compel action.   And this brings us to a consideration of this second question.

2.  What shall the board be required to do?   And in the answer to this inquiry will also be found the answer to the other one: To what extent may relief be granted at the suit of a taxpayer?

*Mandamus* lies to compel the performance of an act which the law specifically enjoins as a duty resulting from an office.   (Rev. Codes, sec. 7214.)   Therefore the character of the duty measures the extent of the relief which can be afforded by *mandamus.* That the law imposes upon the board the duty to exercise its best judgment or honest discretion with respect to the bids submitted is conceded by counsel for both parties.   But counsel for appellant insist that, having exercised an honest discretion, the duty to let the contract to the lowest responsible bidder is absolute. This implies, of course, that the board cannot reject all the bids offered.   There is a serious question whether, by responding to a notice which reserved the right to reject all bids, this relator is [5]   not precluded from denying such authority in the board. In speaking upon a similar state of facts in *People ex rel. Carlin* v. *Supervisors,* 42 Hun  (N. Y.), 456, the supreme court of New York said: "The relator having made his bids under such adver-

tisement, he cannot complain that they [the supervisors] exercised the right he so conceded to them. It was the plain condition of his bid that the board might reject it, and having given his assent to such rejection he cannot challenge their power to exercise the right.'' In other words, when Stuewe submitted his bid, he agreed that the board might reject it, for cause at least.

But has the board the authority to reject all bids? The general powers of the board of county commissioners are enumerated in section 2894 of the Revised Codes. After naming [6] twenty-six separate powers, the section in subdivision 25 then provides that the board has power also: ''To perform all other acts and things required by law not in this title enumerated, or which may be necessary to the full discharge of the duties of the chief executive authority of the county government.''

The several provisions of the statute, relating to the care of county charges, are to be construed together. Section 2054 provides for the publication of the notice calling for bids. Section 2055, as amended by the Act of the Twelfth Legislative Assembly, approved February 23, 1911 (Laws of 1911, p. 78), provides that the board must award the contract to the lowest responsible bidder, provided, however, that if the county owns its own poor farm, properly equipped, the commissioners may employ a superintendent and care for the charges themselves. Section 2057 provides that the board may reject the bid of any person whom they deem unsuitable as a contractor.

Assuming, then, that this board may now be required to reconvene and act upon the bids submitted, it must at such meeting exercise its best judgment or discretion and determine these facts at least: (a) The responsibility of the bidders; (b) the suitability of the bidders; (c) which of the bidders possessing the qualifications of responsibility is the lowest; and (d) whether it is to the best interests of the county that a superintendent be employed, and the poor cared for by the direct method, in preference to caring for them by contract at any bid submitted. And the reason for these exactions is apparent. Responsibility is insisted upon that the contract, when awarded, may be carried

out, the poor receive proper care, and the county be secured. Suitability is demanded, for common experience teaches that a man financially responsible may not be adapted to the work of caring for the county's unfortunates. In the interest of economy, the law insists that the contract, when let, shall be let to the lowest responsible bidder. And, finally, the legislature determined that conditions may arise which will necessitate the employment of a superintendent, and the control of the county charges by the board itself. The lowest responsible bid might be so high as to be ruinous. Two persons equally responsible and suitable might bid the same, and they be the only bidders. Or it might be that not one of the bidders in a given instance would be either financially responsible or a suitable person to have in charge the county's poor. Or the notice calling for bids might not elicit any response at all. Under any of these conditions, can it be said that the hands of the board members are tied, and the board left helpless? Furthermore, the statute expressly authorizes the board to reject the bid of any person whom it deems unsuitable, and the board is expressly authorized to employ a superintendent and care for the county charges by the direct method. These considerations seem to us conclusive that the authority in the board to reject all bids is necessarily implied (*People ex rel. Carlin* v. *Supervisors*, above), and if the situation warrants it the board may readvertise.

If the power to reject all bids, or any bid, under any circumstances, is lodged in the board, then it cannot be the absolute duty of the board to accept the lowest responsible bid. And if there was not an absolute duty imposed upon the board to award the contract to Stuewe in the first instance, because he was the lowest responsible bidder, *mandamus* will not lie to compel such action now.

Our conclusion is that the board cannot be coerced to let the contract to the lowest responsible bidder, upon the showing made in this instance, either at the suit of an unsuccessful bidder or a taxpayer. The office of the writ, if issued, would be to compel the board to act; that is, to exercise its discretion as the law

authorizes, and with respect to the matters which we have enumerated. But the courts could not direct what particular conclusion the board should reach after such discretion had been honestly exercised.

The relator assumes that the proceedings of the board up to September 30 were in conformity with the law, and thus far we have treated the questions raised from that standpoint; but, in our judgment, there is an additional reason for refusing relator the specific relief which he asks.

Section 2054, Revised Codes, as amended by the Laws of 1909, page 34, commands the board *every* September to advertise for [7] bids for the care of the county poor "for a period of not less than one nor more than two years." The contradiction of terms here is manifest, but when this section is read in connection with section 2055, as amended by the Act of 1911, above, we think it is possible to ascertain the legislative intention. Section 2055, as amended, provides that the board shall let the contract "for the ensuing year." Since the board is required to advertise for bids *every year,* and let the contract *for the ensuing year,* it seems but reasonable to say, in view of these provisions and the history of the statutes, that, notwithstanding the contradictory terms employed in section 2054, above, it was the intention of the legislature that bids should be asked for one year only, and that any contract for the care of the county poor should run but one [8] year. "A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter." (*State ex rel. Hay* v. *Hindson,* 40 Mont. 353, 106 Pac. 362; *State ex rel. Geiger* v. *Long,* 43 Mont. 415, 117 Pac. 107.)

In advertising for bids for two years, and in assuming to let a contract to Holbrook for two years, the board exceeded its [9] authority; but, since its action in letting the contract was vitiated by the fraud alleged and admitted, the contract is a nullity.

The alternative writ of mandate issued in this instance merely commands the board to rescind the contract with Holbrook, or show cause why it does not do so, and had the board complied

with the writ, it would not have gone further than to undo what it did, or attempted to do, on September 30. In some jurisdictions, the affidavit is treated as the first pleading; in others, the alternative writ is held to perform that office. In this state, in proceedings where the alternative writ refers to the affidavit, [10] as in this instance, the two are treated as interdependent, and constituting the first pleading on the part of the relator. (*State ex rel. State Pub. Co.* v. *Hogan,* 22 Mont. 384, 56 Pac. 818.) But in all jurisdictions the rules of pleading in ordinary civil [11] actions are applied to test the sufficiency of the first pleading, whether that be the affidavit, the alternative writ, or a combination of both. (26 Cyc. 427.) The practice of testing the sufficiency of the affidavit by motion to quash the alternative writ has prevailed in this jurisdiction since 1879. (*Territory ex rel. Tanner* v. *Potts,* 3 Mont. 364; *State ex rel. State Pub. Co.* v. *Hogan,* above.) "A motion to quash challenges both the sufficiency of the writ and also the sufficiency of the affidavit upon which the writ is based." (*State ex rel. State Pub. Co.* v. *Hogan,* above.) In other words, the motion to quash bears the same [12] relation to the first pleading in *mandamus* that a general demurrer does to the complaint in an ordinary action; and if any one principle of law is settled in this state, it is that a general demurrer cannot be sustained, if the complaint states facts sufficient to entitle the plaintiff to *any* relief whatever. (*Solem* v. *Connecticut Fire Ins. Co.,* 41 Mont. 351, 109 Pac. 432; *Donovan* v. *McDevitt,* 36 Mont. 61, 92 Pac. 49.) To affirm this judgment is to declare that the affidavit and alternative writ do not state facts sufficient to entitle the relator to the relief demanded, or to any relief whatever.

This proceeding is essentially one *ex relatione.* While Stuewe is nominally the complaining party, the taxpayers of Lewis and Clark county constitute the real party in interest; and if it can be said that from the allegations contained in the affidavit and the alternative writ the taxpayers of the county are entitled to relief of any character, which can be granted in this proceeding, [13] it is the duty of the courts to extend that relief, whether this relator individually desires it, or the attorney general opposes

it. In our determination, we are not bound by the prayer of the relator, but may search the affidavit, and order such relief as the facts stated may warrant; for the relief is granted, not to Stuewe individually, but to the public—the real party in interest. (26 Cyc. 484.)

That it is the duty of the board, either to employ a superintendent and take charge of the county poor directly, or to let a contract for the care of the county's unfortunates, cannot be denied. The law imposes the duty upon the board, and any taxpayer may insist that the duty be performed. It appears from the affidavit that this duty has not been discharged, and that the county suffers as a result. These facts, of themselves, are sufficient to entitle the taxpayers to some relief, and a motion to quash ought not to have been sustained.

In our consideration of this matter, we have assumed that the county of Lewis and Clark owns a county poor farm, suitably equipped to care for its charges, since the affidavit presented here does not show the contrary; and the burden is upon the relator to show that the county is not so equipped, in order to show that the board has not the discretion to assume the direct control of its county charges.

In holding that the relator, Stuewe, is not entitled to the writ to compel the board to let the contract to him, the trial court was clearly correct; and this was the only question which that court was called upon to determine. Upon the doctrine of *"the theory of the case,"* we might justify the conclusion reached in the court below; but, since it appears that the public interests are concerned, and that injury is resulting to the taxpayers, this court would be remiss in its duty, if it denied the relief to which the public is shown to be entitled. And respondent Holbrook cannot complain, for in dealing with the board he is presumed to know the limit of the board's authority. He contracted at his peril. (*Lebcher* v. *Board of Commissioners of Custer County,* 9 Mont. 315, 23 Pac. 713.) The parties have stipulated that final judgment shall be entered upon the pleadings presented.

In the course of this opinion, we have referred to the powers and duty of the board sufficiently that repetition is not necessary.

The judgment is reversed, and the cause is remanded to the district court, with directions to overrule the demurrer and motion to quash, and to enter judgment that the peremptory writ of mandate issue, directing the board to cancel all proceedings heretofore taken in this matter, and to proceed according to law.

*Reversed and remanded.*

MR. JUSTICE SMITH concurs.

MR. CHIEF JUSTICE BRANTLY: Though the relator alleges that he is a taxpayer, the purpose he seeks to accomplish in this proceeding is, not to compel the defendant board to rescind the contract let to Holbrook, and then proceed according to the requirements of the statute to let a contract for a period of one year, but to have himself substituted in place of Holbrook, on the sole ground that he was the lowest responsible bidder. In other words, he claims that he is entitled to have the board accept his bid according to its terms, and award him a contract for a period of two years. This being his position, the district court was clearly correct in denying him relief, both because his bid was rejected, and because it is manifest that the board has not the power to let such a contract, nor even to consider the bids as made. Neither was the district court, nor is this court, asked to grant any other relief; and, while I concede that, upon the admitted facts, the proceedings resulting in the letting of the contract to Holbrook were nugatory, on the ground of fraud, as well as on the ground that the board failed to pursue the statute, I think that in reviewing the judgment of the district court this court should accept the theory upon which the proceeding was presented to it, and approve or disapprove its action accordingly, leaving the relator to institute a proper proceeding as a taxpayer, if he chooses to do so, to have the Holbrook contract annulled. I do not think the relator should be compelled to accept relief which he did not demand from the district court, and which he does not now ask of this court, however reprehensible the conduct of the board may have been. I therefore do not agree with my associates in the disposition of this case.