STATE OF MONTANA ex rel. THOMAS F. MORGAN, SR., Reltor and Respondent, v. HUBERT G. WHITE, MRS. ELMER SCHYE, MALCOLM W. BOWDEN, JAMES GERARD, IRVIN E. SCHNYDER, and BOARD OF ADMINISTRATION OF PUBLIC EMPLOYEES RETIREMENT SYSTEM of State of Montana, Respondents and Appellants.

No. 9999.
Submitted September 18, 1959. Decided February 3, 1960.
348 Pac. (2d) 991.

See **C. J. S.** Mandamus, § 208.

Forrest H. Anderson, Atty. Gen., Michael J. Hughes, Sp. Asst. Atty. Gen., for appellants. Michael J. Hughes, Sp. Asst. Atty. Gen., argued orally.

Skedd, Harris & Massman, Hubert J. Massman, Helena, for respondents. Hubert J. Massman argued orally.

MR. JUSTICES BOTTOMLY delivered the Opinion of the Court.

This is an appeal by the Board of Administration of the Public Employees' Retirement System, hereinafter referred to as the Retirement System, from a judgment entered in the District Court of Lewis and Clark County in favor of the relator, Thomas Morgan.

In 1941, Thomas Morgan commenced his employment as a guard at the Montana State Prison at a starting salary of but $70 per month. He was a member of the Retirement System at the time of receiving the injury complained of, at which time he was upwards of the age of 69 years with his wife as

his only dependent, his children all being married. His last regular monthly salary was $220.

During the summer of 1956, Thomas Morgan's shift at the State prison was changed from an eight-hour day commencing at 1:30 p.m. and ending at 9:30 p.m., to a twelve-hour shift beginning at 5:30 a.m. and ending at 5:30 p.m. Morgan was required to work more and more of the twelve-hour shifts during the summer and fall of 1956 because of the shortage of prison guards, and finally he was required to work and he did work some seventeen, twelve-hour shifts out of the last twenty shifts he was able to work. The last shift Morgan was working was a twelve-hour shift. During this shift, Morgan became ill. His wife came for him, took him home, and then directly to Dr. Benjamin's office in Deer Lodge, where, after examining him, the doctor informed him that ''he must take a layoff. Get away from that wall; and see if you can forget it.''

On the 29th of November, 1956, Thomas Morgan again became sick. Again he was examined by Dr. Benjamin, who again told Morgan his trouble had been and was a ''heart attack;'' that Morgan was through; that there was no more work for him; that he was to take the medicine and rest. At the times above mentioned, there was no requirement on behalf of the Prison for a physical examination or for a physical check up of the prison guards. There was no denial of Morgan's testimony to the above effect, in fact, the deputy warden testified that during the period when Morgan was working twelve-hour shifts it was impossible to obtain relief guards to take the place of any guard taking vacation, *so any guard had to work the long overtime twelve-hour shifts to get their vacation.*

After his attacks of sickness and after being laid off by the prison, Thomas Morgan made application for compensation under Plan Three of the Workmen's Compensation Act, R.C.M. 1947, section 92-101, et seq., by which he, as a state employee, was automatically covered.

Thereafter, a hearing was had by the Industrial Accident Board. Testimony was presented by Thomas Morgan as to all the facts and circumstances in connection with his employment, his injury, age, dependents, together with medical testimony and witnesses and testimony presented on behalf of the Board. After fully considering such evidence the Board made and entered its findings of fact and conclusions of law as follows:

"Findings of Fact

"I.

"Thomas Morgan, Sr., suffered accidental injury in an accident arising out of and in the course of his employment by Montana State Prison in Powell County, Montana, on or about November 27, 1956. At the time of his accidental injury his employer was enrolled under Plan Three of the Workmen's Compensation Act, and was thereby insured by the Industrial Accident Fund.

"II.

"At the time of his accidental injury, the claimant was married but had no minor children under the age of eighteen (18).

"III.

"That the preponderance of the evidence established that the claimant suffered a coronary occlusion which was the result of unusual strain and exertion while in the performance of his duties as a prison guard, and this has resulted in total permanent disability.

"IV.

"That fifty-five (55) percent of the wages the claimant was earning at the time of his accidental injury, exceeds the maximum compensation provided in the Workmen's Compensation Act for an injured workman with a wife and no children.

"Conclusions of Law

"I.

"Thomas Morgan, Sr., suffered accidental injury on November 27, 1956, entitling him to compensation at the rate of

Twenty-eight Dollars and Fifty Cents ($28.50) per week for a period of five hundred (500) weeks from the date of his injury.

## "II.

"That all compensation awarded by the Board should be paid every four (4) weeks.

"and Ordered, inter alia,

"* * * that the Industrial Accident Board shall pay to the claimant, Thomas Morgan, Sr., from the Industrial Insurance Fund, compensation at the rate of Twenty-eight Dollars and Fifty Cents ($28.50) per week for five hundred (500) weeks from and after November 27, 1956."

Thereafter a unanimous order was made and entered by the Industrial Accident Board on July 22, 1957, ordering into effect the foregoing findings and conclusions. The payments as therein determined are being paid.

The relator Morgan, being a member of the Retirement System, on March 21, 1957, filed his claim with the Board of Administration of the Retirement System, alleging that his separation from his state employment was caused by accidental injury, being a coronary occlusion caused by unusual strain and exertion resulting from his being required to work twelve-hour shifts beginning at 5:30 a.m. each day.

Morgan's claim was considered by the Board of the Retirement System at their April 1957 meeting. It will be noted that this claim was for what the Board of the Retirement System designates as an "industrial disability retirement.' After its secretary presented Morgan's record to the Board of the Retirement System, and *without any formal hearing,* the Board, as is stated in its minutes, proceeded as follows:

"Regular Meeting
"Board of Administration
"Public Employees' Retirement System
"April 19, 1957

* * * * * *

"The regular meeting of the Board of Administration of the Public Employees' Retirement System of Montana was held in the office of the Secretary, Room 237, Sam W. Mitchell Building, Helena, Montana, beginning at 9:00 a.m., Friday, April 19, 1957. * * *

"*Ordinary Disability Retirements:*

"1. The Secretary presented for the consideration of the members of the Board, the claim of *Thomas F. Morgan,* for an industrial disability retirement based on a disability diagnosed as 'Coronary insufficiency, arteriosclerosis,' a service record of fourteen (14) years, two (2) months and sixteen (16) days, and the attained age of sixty-nine (69) years at the time of his disability. He noted that Mr. Morgan's right to membership had been questioned since no contributions for active membership had been received following his disability and a service thereafter, and a refund for retroactive membership contributions had been authorized by the Board of Administration. He noted further that subsequent to this action that Mr. Morgan's attorney, Hubert J. Massman, Helena, Montana, appealed to the Board of Examiners for Mr. Morgan's continuation in employment on sick leave and compensation, with membership contributions thereon, and that the request was approved by said Board and membership contributions thereon, and that the request was approved by said Board and membership contributions [sic] were made to March 1, 1957, thus effecting Mr. Morgan's membership and his right to apply for retirement. He added further that Mr. Massman was attempting to secure Industrial Accident Board compensation for this disability on November 26, 1956, since he alleges in his claim that Mr. Morgan's heart attack arose out of his employment at Montana State Prison due to excessive hours of work and that he felt that an industrial disability was pending as a result of this attack. He read the medical report as submitted by Dr. L. M. Benjamin, Deer Lodge, who did not suggest any history of industrial causation, and who stated that his prognosis was

'guarded,' *that the claimant could not carry on any gainful occupation and that the disability was considered as total and permanent.* After due consideration of all the medical data relating to the disability it was moved by Mr. Bowden that the claim of Thomas F. Morgan, Sr., be approved for a regular service retirement in the amount of $43.30 per month under a regular retirement inasmuch as he was over sixty-five (65) years of age and the amount payable in benefits was equal to that provided under an ordinary disability retirement.

"Mr. McDonald seconded the motion, which upon being submitted to vote carried unanimously." Emphasis supplied.

Thereafter and at the regular meeting of the Board of Administration of the Retirement System, held August 16, 1957, the attorney for relator requested a meeting with the Board to again present the matter of Thomas F. Morgan's retirement because of incapacity to perform his employment, as a result of his heart condition brought on by his continued long hours of work.

After hearing the attorney's argument, the Board again affirmed their previous action of denying "industrial retirement," and would allow the claimant only a "regular service retirement." It should be noted from the foregoing "Findings" that the Industrial Accident Board had just found that claimant, Thomas F. Morgan, had suffered an industrial injury.

Following the denial of his claim for an industrial disability retirement, this action in mandamus was commenced by the relator wherein he sought to have the District Court compel the Board of Administration of the Retirement System to pay industrial disability retirement benefits. An alternative writ of mandate was issued and the Board of Administration of the Retirement System filed a motion to quash and demurrer to the application for writ of mandate. After these were overruled the Board filed its answer.

In their answer, the Board set out that although the Indus-

trial Accident Board had determined that relator Morgan was permanently, totally disabled from an accident arising out of and in the course of his employment, that the Board of Administration of the Retirement System was not bound by such finding and determination; that accordingly the Board of Administration of the Retirement System had found that relator Morgan was totally and permanently disabled, but that such total disability did not arise out of, or in the course of Morgan's employment and therefore the relator Morgan was not entitled to an industrial disability retirement, since the award of such a retirement depends upon a finding that the disability causing the retirement "arose out of and in the course of" claimant's employment; that in addition, if the Board of Administration were to find the total disability of the claimant "arose out of and in the course of" his employment and were to pay or authorize payment for an "industrial retirement" then the provisions of section 68-901, subd. (h), R.C.M. 1947, as amended, would apply as the statute provides in part:

"Any compensation paid by the industrial accident board of the State of Montana to any member of the retirement system for total and permanent disability resulting from injury or disease arising out of and in the course of employment shall be deducted from the benefits payable under the retirement system for such disability." The result being that if the Retirement System were to pay industrial retirement benefits to the claimant, such payments would have to be reduced by the amount of workmen's compensation payments the claimant was receiving pursuant to the Industrial Accident Board's finding that the claimant was totally disabled from a cause arising out of and in the course of his employment.

In reply to this contention, the relator Morgan asserted that such a provision was not applicable.

After the hearing held on this proceeding, the District Court found in favor of the relator and claimant and directed that he be paid industrial retirement benefits by the Retirement

System; and that from these payments so ordered, no deductions should be made because of workmen's compensation being paid to the relator by the Industrial Accident Board. The district judge stated in his written opinion that benefits paid by reason of the industrial retirement could not be reduced by the amount of benefits paid by the Industrial Accident Board, because the statute so providing was unconstitutional. With this conclusion we agree. Article V, section 26, of the Constitution of the State of Montana, as here pertinent, provides:

"* * * where a general law can be made applicable, *no* special law shall be enacted." Emphasis supplied.

In the case of State ex rel. Redman v. Meyers, 65 Mont. 124, 210 Pac. 1064, 1066, in discussing this subject our Supreme Court said: "So-called class legislation may be constitutional if the class is germane to the purpose of the law and is characterized by some special qualities or attributes which reasonably render the legislation necessary, or, in other words, if the classification is reasonable, and the law operates equally upon every person or thing within the given class. 1 Lewis' Sutherland Statutory Construction, section 203. Interdicted class legislation includes all laws that rest upon some false or deficient classification, and the vice in such laws is that they do not embrace all of the class to which they are naturally related. State [ex rel. Van Riper] v. Parsons, 40 N.J.L. 1. A fair test for determining whether a statute is special is this: Does it operate equally upon all of the group of objects which, having regard to the purpose of the legislature, are distinguished by characteristics sufficiently marked and important to make them a class by themselves? Clendaniel v. Conrad, 3 Boyce 549 [26 Del 549], 83 A. 1036, Ann. Cas. 1915B 968."

Likewise in the case of Leuthold v. Brandjord, 100 Mont. 96, 105, 47 Pac. (2d) 41, 45, the court said:

"The term 'general law' as used in section 1 of article 17, and section 26 of article 5 of our Constitution, does not necessarily mean a law which operates on all persons or all things

pertaining to the subject of the legislation. The word 'general' comes from the Latin *genus* and relates to the whole kind, class or order; hence a law which affects a class of persons or things, less than all, may be a general law. Brooks v. Hyde, 37 Cal. 366. Interdicted class legislation includes all laws that rest upon some false or deficient classification, and the vice in such laws is that they do not embrace all of the class to which they are naturally related. State [ex rel. Van Riper] v. Parsons, 40 N.J.L. 1, see also Roberts v. Hosking, 95 Mont. 562, 28 Pac. (2d) 199; Atchison [T. & S.F.] Ry. [Co.] v. Matthews, 174 U.S. 96, 19 S.Ct. 609, 43 L.Ed. 909; Soon Hing v. Crowley, 113 U. S. 703, 5 S. Ct. 730, 28 L. Ed. 1145. However, a law is general and uniform in its operation when it applies equally to all persons embraced within the class to which it is addressed, provided such classification is made upon some natural, intrinsic, or constitutional distinction between the persons within the class and others not embraced within it, *but is not 'general,' and it makes an improper discrimination if it confers particular privileges or imposes peculiar disabilities upon a class of persons arbitrarily selected from a larger number of persons all of whom stand in the same relation to the privileges conferred or the disabilities imposed.* The difference on which the classification is based must be such as, in some reasonable degree, will account for and justify the particular legislation. In re Miller, 162 Cal. 687, 124 Pac. 427; Equitable Life Assur. Co. v. Hart, 55 Mont. 76, 173 Pac. 1062; Tonn v. City of Helena, 42 Mont. 127, 111 Pac. 715, 36 L.R.A., N.S., 1136; State ex rel. Bray v. Long, 21 Mont. 26, 52 Pac. 645.'' Emphasis supplied.

There can be no justification for dividing injured employees into two classes where each class has no difference between them except the degree of disability found by the Industrial Accident Board.

This result follows by necessity from the holding of this court in State ex rel. Ebel v. Schye, 130 Mont. 537, 305 Pac.

(2d) 350. In that case, this court held that section 68-901, subd. (h), did not give the Board of Administration of the Retirement System authority to deduct workmen's compensation payments from awarded retirement benefits when the covered employee was permanently *partially disabled*. Section 68-901, subd. (h), being applicable, if at all, *only* to totally, permanently disabled employees covered by the Retirement System and unconstitutional as a special law in violation of section 26 of Article V of the Montana Constitution. The constitutional question was not directly decided in that decision, as the court felt it unnecessary to so decide the question when the decision could rest on other ground. However the unconstitutionality of the statute is implicit when the statute is construed as this court directed in the Ebel case, supra.

When we compare the application of the statute to two members, in all respects identical, included within the class of employees covered by the Retirement System the defect is obvious. The relator here suffered a heart attack which rendered him permanently, totally disabled.

The Industrial Accident Board held that the disability was covered by workmen's compensation and granted benefits. The Board of Administration of the Retirement System contends that if they were to grant retirement founded upon the same cause as that determined by the Industrial Accident Board that they would have to deduct the workmen's compensation payments from this employee's retirement grant. The result in this case would be that the Retirement System would pay this employee nothing from the retirement fund until he had exhausted his workmen's compensation. On the other hand, if this relator or another prison guard had fallen and broken both legs while on duty, and the Industrial Accident Board awarded him workmen's compensation because he was permanently *partially* disabled, and industrial retirement was also awarded as would be the employee's right, then this partially, disabled employee even if such disability were 99 percent of

total, would, because he was only partially disabled collect workmen's compensation and public employees industrial retirement both at the same time.

This same right may not be denied to the permanently, totally disabled employee. To do so would be to make an improper discrimination by conferring particular privileges and imposing peculiar disabilities upon special classes of persons standing in the same relation to the privileges conferred or the disabilities conferred.

This application of the statute would divide public employees who have suffered work-connected injuries and who have paid their assessments in the Retirement System into separate classes solely dependent upon the degree of disability. Those totally, permanently injured would be penalized by receiving less retirement than they had paid for, those permanently, partially injured would receive the amount the law provides. The classification made by the statute is unreasonable, inequitable and contravenes the mandatory provisions of our fundamental law.

However, we do not wholly determine this particular proceeding on the constitutional issue. This was an action in mandamus and the immediate question presented on this appeal is whether or not the relator is entitled to the relief sought or other relief necessarily included. The specific relief asked in this proceeding would require that we direct and command the Board of Administration of the Retirement System to make a specific finding that the relator was entitled to "industrial retirement." Section 68-901, subd. (h), R.C.M. 1947, provides, in part:

"(h) Any member who has not reached seventy (70) years of age shall be retired for disability if incapacitated for the performance of duty as the result of any injury or disease arising out [of] and in the course of his employment. Incapacity for performance of duty shall be determined by the board of administration of the public employees' retirement system, and said board of administration shall determine whether

such incapacity is the result of injury or disease arising out of and in the course of employment. In the discharge of its duty regarding such determination, the board or any member thereof or duly authorized examiner or other duly authorized representative of the board shall have power to conduct hearings, administer oaths and affirmations, take depositions, certify to official acts and issue subpoenas to compel the attendance of witnesses and the production of books, papers, correspondence, memoranda and other records deemed necessary as evidence in connection with a claim for disability retirement. If the board determines on the evidence that it obtains and application filed that the disability resulted from injury or disease arising out [of] and in the course of employment, the said member shall be retired forthwith and be paid the benefits provided under the retirement system. Any such member incapacitated for the performance of duty by reason of a cause not included in the immediately preceding sentence, and any other member so incapacitated, regardless of the cause, shall be retired forthwith regardless of age but only after ten (10) years of service to the state, or to the contracting city.''

This statute specifically commands that the *Board of* *ministration make the determination* whether incapacity is the result of injury or disease arising out of or in the course of employment. The Board's discretion to make the determination may not be compelled by mandamus. Mandamus will compel action but not control discretion. State v. Rathbone, 110 Mont. 225, 100 Pac. (2d) 86; State ex rel. Stuewe v. Hindson, 44 Mont. 429, 120 Pac. 485; State ex rel. Scollard v. Board of Examiners for Nurses, 52 Mont. 91, 156 Pac. 124.

In disposing of this proceeding we are mindful of what this court said in Stuewe v. Hindson, supra. There, in speaking of a writ of mandate at page 443 of 44 Mont., at page 489 of 120 Pac., it was held:

''In our determination, we are not bound by the prayer of

the relator, but may search the affidavit, and order such relief as the facts stated may warrant * * *''

A state employee is not consulted nor has he any choice in the matter of being covered by the Workmen's Compensation Act, Plan Three, nor does he pay any part of the coverage therefor, except indirectly, but the law itself gives him the right to compensation in case of injury as here, and as found by the Industrial Accident Board. However when a state employee becomes a member of the Public Employees' Retirement System, he enters into a contract with the State and pays the amount designated by the State from his wages or salary, which has been determined necessary in each individual case.

It must be kept in mind that the very reason for this Act is by the Legislature set forth as follows: ''Section 1. The purpose of this act is to effect economy and efficiency in the public service *by providing a means whereby employees who become superannuated or otherwise incapacitated may, without hardship or prejudice, be replaced by more capable employees,* and to that end providing a retirement system consisting of retirement compensation and death benefits.'' Chapter 212, Laws of 1945, now R.C.M. 1947, section 68-101. Emphasis supplied. This section has never been amended.

Certain sections of the Act have been amended by Chapter 186, Laws of Montana of 1951, and the Act in effect at the time this controversy arose and which controls here is the Act as amended by chapter 186, Laws of 1951.

*When the public interest is involved, this court must grant relief if it is evident that the relator is entitled to it upon any theory.* The pertinent provisions of section 68-901, subd. (h), set out, supra, make it the duty of the Board of Administration of the Retirement System to determine, after a notice and a hearing (which is required by the constitutional due process) whether or not the relator should be found to be incapacitated for his work as a result of any injury or disease arising out of and in the course of his employment. This is

made very apparent by reading the title to chapter 186, Laws of 1951, which in this regard states, "An Act to Amend [among other sections] * * * section 68-901, Revised Codes of Montana 1947, * * * By Providing the Board of Administration of the Public Employees' Retirement System, *Instead of the Industrial Accident Board, Shall Determine Incapacity for Performance of Duty* as the Result of Injury or Disease Arising Out of and in the Course of Employment; That Said Board of Administration Shall Have Power to Hold Hearings, Administer Oaths, Take Depositions, and Perform Other Acts Necessary to the Making of Such Determinations." Emphasis supplied.

The title indicates the intent of the Legislature to place a ■ duty on the Board of Administration to determine incapacity by public hearings and in the same manner as the Industrial Accident Board had theretofore, and to determine whether or not such incapacity, if found, was the result of injury or disease arising out of and in the course of such employment. In this case incapacity had been determined by the Industrial Accident Board, but such finding was not accepted or approved by the Board of Administration of the Public Employees' Retirement System. The record clearly indicates the Board did not provide the hearing as contemplated by the statute and required by due process. They never held a formal hearing, they did not swear and hear, in open hearing, the testimony of witnesses. They did not follow the procedure set out by the statute as essential in this matter to provide this claimant a fair and adequate hearing. Because the Board of Administration of the Public Employees' Retirement System has not as yet performed its statutory duty and afforded the relator the hearing to which he is entitled, the judgment and order of the District Court must be reversed. This cause is remanded to the District Court, and said court is hereby directed and ordered to make an order commanding the Board of Administration of the Public Employees' Retirement Sys-

tem to grant this relator the hearing required by section 68-901, subd. (h), R.C.M. 1947. The Board of Administration will then make and enter its findings and determination and order and pay relator the retirement he is justly entitled to receive.

It is so ordered.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES ANGSTMAN, ADAIR and CASTLES concur.