No. 84-557

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

IN THE MATTER OF L. R., Youth
In Need of Care.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Hartelius & Ferguson; Cameron Ferguson, Great Falls,
Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Kathy Seeley, Asst. Atty. General, Helena, Montana
Patrick L. Paul, County Attorney, Great Falls, Montana
Barbara Bell, Deputy County Atty., Great Falls
Jeffrey T. McAllister, Atty. for L.R., Great Falls,
Montana

Submitted on briefs: July 25, 1985

Decided: October 15, 1985

Filed: OCT 15 1985

*Ethel M. Harrison*
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

A. R. and W. R. appeal an Order of the Cascade County District Court requiring them to pay $28.80 per day for the care of their adopted daughter, L.R., in a foster care institution known as the Achievement Home. The court determined the parents were financially able to contribute to L.R.'s placement costs based upon A.R.'s monthly income, and his wife, W.R.'s ability to work.

The sole issue raised by appellants is whether the District Court abused its discretion in setting the parent's support obligation at an excessively high level.

We reverse with instructions.

In 1976, A.R. and W.R. adopted a seven-year-old daughter, L.R. The District Court determined she was a youth in need of care, and she was removed from her home when she was 15 years old. Her adoptive parents then attempted to relinquish custody of her and to terminate their parental rights and obligations.

At the time of the financial support hearing, L.R. was residing at an institution known as the Achievement Home, in Great Falls. Her cost at the Achievement Home was $28.80 per day (approximately $875.00 per month). The cost of regular foster care in a private home would be between $300 and $350 per month. L.R. was placed in the more expensive Achievement Home because of difficulty finding a foster home for a child of her age, and because of L.R.'s difficulty in adapting to a private foster home. In an order entered subsequent to its original order, the District Court refused to modify L.R.'s placement in the Achievement Home.

In arriving at its finding that the parents were financially able to support L.R. in the Achievement Home, the District Court relied on § 41-3-1124(3), MCA, which provides in part:

> If the court determines that the parents are able to contribute to the support of the youth . . ., the court shall issue an order directing the parents or guardian to make specified payments to the department to the extent considered appropriate under the circumstances.

Further, we note in A.R.M. § 46.5.692:

> PARENTAL CONTRIBUTION COMPUTATION (1) For purposes of determining whether a parent is financially able . . . to support the child in a youth care facility and for purposes of determining a recommended amount of contribution, the department hereby adopts and incorporates by reference ARM 42.6.101 through ARM 42.6.108, which sets forth the formula for determining the suggested minimum monthly child support contribution for purposes of child support enforcement purposes.

A.R.M. § 42.6.101(4) defines "[m]onthly gross available resources" as "the sum of monthly income and ½% of assets." From this amount is deducted an allowance for each person living in the home and financially dependent upon the parents. The resulting figure is used to determine the suggested support contribution.

On this appeal, the parents assert that the District Court erred by including as income, the wife's "ability to work" as this is a speculative condition. In its finding of fact no. 5, the District Court provided: "[W.R.] is not working at the present time, but has worked in the past." Finding of fact no. 8 provided: "[A.R. and W.R.] are financially able to support the cost of [L.R.'s] placement in at the Achievement Home based on [A.R.'s] monthly income and [W.R.'s] ability to work." The parents cite our opinion in Gall v. Gall (1980), 187 Mont. 17, 20, 608 P.2d 496, 498, which provides:

> [t]he conditions and circumstances of the parties
> must be examined and determined at the time of the
> modification hearing, and may not be based upon
> mere speculative future conditions or possible
> conditions.

We reiterated the point in Duffey v. Duffey (Mont. 1981), 631 P.2d 697, 38 St.Rep 1105, when we vacated an order which premised increased child support on the speculation that certain social security benefits "were sure to increase in the future." While both Gall and Duffey address the child support obligation between divorced parents, and the present case involves a child support obligation of parents who are still married, we see no substantive distinction which would preclude an analogy to the present case determination that the amount of support should not be based upon speculative conditions.

In order to affirm an order of the District Court, substantial credible evidence must exist in the record supporting its conclusions. The court concluded the support order was based in part on its finding no. 8 of "[W.R.'s] ability to work." However, nothing in the record supports that finding. The only relevant reference is on the parents' financial statement, which provided: "[A.R.'s] income is our only income since [W.R.] is not working."

The obligation of support cannot be based upon speculative conditions. But a parent's ability to contribute is a legitimate consideration in determining the amount of an obligation of support. In the present case, the allegations that W.R. is able to work are not supported by record evidence, and without more, amount to mere speculation.

We reverse with instructions to conduct a hearing on W.R.'s ability to contribute to L.R.'s support.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

- 5 -