No. 99-542

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 124


DEBCON, INC.,

Plaintiff and Appellant,

v.

CITY OF GLASGOW and

DELTA ENGINEERING, INC.,

Defendants and Respondents.

APPEAL FROM: District Court of the Seventeenth Judicial District,

In and for the County of Valley,

The Honorable John C. McKeon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Torger Oaas, Lewistown, Montana

For Respondent:

William Conklin, Conklin, Nybo, LeVeque & Lanning, Great Falls, Montana


Submitted on Briefs: July 20, 2000
Decided: July 23, 2001

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Appellant Debcon, Inc. (Debcon), appeals the Order entered by the Seventeenth Judicial District Court, Valley County, that granted summary judgment in favor of Respondents City of Glasgow and Delta Engineering, Inc. (hereinafter the City and Delta, respectively), and denied Debcon's motion for partial summary judgment and motion to amend its complaint.

¶2 We affirm.

¶3 Debcon raises two broad issues, which we have recast as follows:

> 1. In granting summary judgment in favor of Delta, did the District Court correctly conclude that Delta owed no duty of care to Debcon in fulfilling its contractual obligation to the City to make recommendations concerning the lowest responsible bid?

> 2. Did the District Court correctly conclude that as a matter of law Debcon could not assert a bad faith claim against Delta, and therefore the denial of Debcon's motion to amend its complaint was proper?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 In January of 1997, the City contracted with Delta, a Great Falls engineering firm, to prepare plans, specifications, and bid documents for a municipal improvement project known as the Combined Sewer Separation Project, Phase I, Southside (hereinafter the Project). Delta also agreed to perform design engineering, construction inspection, and administration work on the Project.

¶5 Under Article 1, section 3.0, of the contract, Delta agreed to perform "bidding phase services." This included providing "award recommendations." Delta also agreed to "attend the bid opening" and "review bid results." Thus, Delta produced for dissemination a

document entitled "Contract Documents and Specifications for Southside Stormwater Collection System, Glasgow, MT" in June of 1997.

¶6 Under section 1.1, the bid specification document provided that the "right is reserved to reject any or all bids, to waive any defect or informality in any bid therein, and to accept the bid or bids which the Council feels is in the best interest of the City." Under section 1.2, instruction number 11, the document provided that "[t]he Contract will be awarded to the lowest responsible Bidder" and the lowest responsible Bidder "shall be the Contractor whose Bid is the lowest for each individual Bid Schedule." Under instruction 11(c), however, the document provided once again that the "Owner," meaning the City, reserved "the right to reject any or all Bids or to waive any informality or technicality in any Bids received." The instructions further provided that the "Contract will be awarded in conformance with the laws of the State of Montana."

¶7 Under instruction 11(e), the document provided:

> The Owner may make such investigations as it deems necessary to determine the ability of the Bidder to perform the work, and the Bidder shall furnish to the Owner all such information and data for this purpose as the Owner may request. The Owner reserves the right to reject any Bid if the evidence submitted by, or investigation of, such Bidder fails to satisfy the Owner that such Bidder is properly qualified to carry out the obligations of the Agreement and complete the work contemplated therein. The ability of a Bidder to obtain a Performance Bond and/or Bid Bond shall not be regarded as the sole test of such Bidder's competency or responsibility.

The bid sheet that Debcon filled out and submitted likewise included the provision that "Bidder understands that the Owner reserves the right to reject any or all bids and to waive any informalities in the bidding."

¶8 Bids were accepted and opened on the same day, July 7, 1997. The Appellant Debcon's bid of $1,486,504 was by far the lowest. Debcon is a Montana corporation located in Lewistown, Montana. The undisputed facts show that Debcon's bid was 15 percent lower than the other six bids, and that the other bids were within one percent of each other, and were consistent with Delta's pre-bid estimate of $1,765,561.

¶9 According to an affidavit submitted by John Juras, a Delta employee and licensed professional engineer, two mathematical errors were discovered in Debcon's bid, both in

excess of $100,000. It is undisputed that once corrected, Debcon's bid--$1,554,945--was still lower than the closest bid. According to Juras, who was assigned as project engineer for the project, "[t]hese two very large mathematical errors increased my concern about the advisability of accepting Debcon's bid." Juras further attested that because Delta's contract called for him to provide a contract award recommendation, "I made some telephone calls to learn what I could about Debcon, Inc."

¶10 According to Juras's affidavit, he learned that Debcon might be "over-extended" with other projects and that the company may be difficult to work with and "quick to file lawsuits." Other sources of information--i.e., other parties that had dealt with Debcon in the past--offered for the most part neutral feedback. Additionally, Juras stated that he was concerned that the low bid price might lead to the contractor "losing money, cutting corners, and other problems." Juras also attested to his observations concerning Debcon's vice president, who apparently filled out the bid documents just moments before submitting them, and did not ask any questions at a bidders conference held in June, which led Juras to believe that Debcon was "inadequately prepared."

¶11 Consequently, Juras on behalf of Delta recommended to the Glasgow City Council that Debcon's bid was not in its best interest, and that it should accept the next lowest bid. The City Council, in turn, issued Resolution No. 1553, which listed the seven submitted bids. The bid attributed to Debcon was the uncorrected bid of $1,486,504. The Resolution provided that "the mistakes in Debcon's bid are deemed to be material" and "the Engineer has recommended that the contract be awarded to Northern Line Layers, Inc. as the lowest responsible bid." The Resolution resolved that "the bid of Debcon, Inc. is rejected because it contains errors which are both significant and material."

¶12 Debcon brought suit against the City and Delta on December 4, 1997, alleging negligence in the award of the construction contract. On May 7, 1999, Debcon sought to amend its complaint. Again, Debcon claimed that the City and Delta had negligently failed to follow "their own bid specifications." Debcon further claimed, under a second count, that Delta's recommendations to the City included misrepresentations. Apparently, Count II was a claim that Delta acted in bad faith in the "circumstances surrounding the rejection of Debcon's low bid."

¶13 Delta moved for summary judgment on May 5, 1999. In part, Delta claimed that it owed no duty of care to Debcon, as a stranger to the contract between Delta and the City, regarding any of its recommendations. Debcon moved for summary judgment on May 17.

¶14 Following a hearing, the District Court determined, as a matter of law, that Debcon lacked standing to assert a duty of care owed to it by the City.

¶15 The District Court then concluded that Debcon's negligence claim against Delta must fail as a matter of law as well. The court ruled that "[a]n essential element for asserting negligence as a claim of relief is existence of a duty flowing from the alleged wrongdoer to the claimant." The court determined that Delta owed no duty of care to Debcon under the circumstances. "Delta is an independent project engineer whose obligations are by contract with [the City of Glasgow]."

¶16 Further, the court observed that, under this Court's decision in *Jim's Excavating Serv., Inc. v. HKM Assoc.* (1994), 265 Mont. 494, 878 P.2d 248, where this Court relied on Restatement (Second) of Torts § 552, there was no allegation that Delta's recommendations to the City contained false information concerning Debcon. The court further observed that Debcon had not alleged that Delta knew or should have foreseen that its actions would be relied upon by Debcon. Thus, the court concluded that the duty of care established in *Jim's Excavating* concerning project engineers' obligations to third parties did not apply in this case.

¶17 Finally, the court determined that because Debcon's amended complaint asserting bad faith asserted "no special relationship" between itself and Delta, "there can be no bad faith claim against Delta."

¶18 Debcon appeals from that part of the order that granted summary judgment in favor of Delta. Debcon does not appeal the summary judgment granted in favor of the City.

## STANDARD OF REVIEW

¶19 This Court reviews an order granting summary judgment *de novo*, using the same Rule 56, M.R.Civ.P., criteria applied by the district court. *See Spinler v. Allen*, 1999 MT 160, ¶ 14, 295 Mont. 139, ¶ 14, 983 P.2d 348, ¶ 14. This Court looks to the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits to determine the existence or nonexistence of a genuine issue of material fact. *See Erker v. Kester*, 1999 MT 231, ¶ 17, 296 Mont. 123, ¶ 17, 988 P.2d 1221, ¶ 17.

¶20 When we review a district court's conclusions of law, our standard of review is plenary and we must determine whether the court's conclusions are correct as a matter of

law. *See Lane v. Farmers Union Ins.*, 1999 MT 252, ¶ 15, 296 Mont. 267, ¶ 15, 989 P.2d 309, ¶ 15 (citation omitted).

¶21 Ordinarily, summary judgment is not granted in causes grounded in negligence claims due to the requisite finding that no material facts remain in dispute. *See Dillard v. Doe* (1992), 251 Mont. 379, 382, 824 P.2d 1016, 1018 (citations omitted). However, if a party seeking summary judgment establishes the absence of a genuine issue of material fact as to any one of the elements constituting the cause of action, and the opposing party fails to come forward with proof establishing the existence of a genuine issue as to that element, summary judgment is proper. *See White v. Murdock* (1994), 265 Mont. 386, 389-90, 877 P.2d 474, 476. Any inferences to be drawn from the factual record, however, must be resolved in favor of the party opposing summary judgment. *See Boylan v. Van Dyke* (1991), 247 Mont. 259, 266, 806 P.2d 1024, 1028.

¶22 Further, we may affirm a district court decision which is correct regardless of the district court's reasoning in reaching its decision. *See, e.g., Clark v. Eagle Systems, Inc.* (1996), 279 Mont. 279, 287-88, 927 P.2d 995, 1000 (affirming summary judgment on tortious interference and emotional distress).

## DISCUSSION

¶23 Debcon does not challenge any of the District Court's decisions pertaining to the City. Rather, both issues raised focus squarely on the alleged negligent or bad faith conduct of Delta. With this in mind, we proceed to the issues raised.

### *Issue 1.*

> *In granting summary judgment in favor of Delta, did the District Court correctly conclude that Delta owed no duty of care to Debcon in fulfilling its contractual obligation to the City to make recommendations concerning the lowest responsible bid?*

¶24 The primary focus of our inquiry here is the first question of negligence: duty. *See Dobrocke v. City of Columbia Falls*, 2000 MT 179, ¶ 28, 300 Mont. 348, ¶ 28, 8 P.3d 71, ¶ 28 (citations omitted). Debcon claims that under "settled" Montana law, an engineering firm owes a duty of ordinary care to competitive public bidders to present their bids correctly to the owner of the project in question.

¶25 Debcon's negligence claim, as stated in its complaint, alleges that Delta negligently failed to follow and apply the provisions found in the City's bid specifications, and "negligently used the mathematical error by Debcon, Inc., to disqualify them from receiving the contract for this project." Debcon alleges that the bid specifications promulgated by Delta on behalf of the City required Delta to correct Debcon's admitted mathematical errors, and submit a corrected bid to the City. In turn, Debcon expansively argues on appeal that Delta not only negligently handled Debcon's mathematical errors, but also negligently provided a recommendation to the City that Debcon's bid should be rejected.

¶26 Thus, according to Debcon, Delta breached a duty of care owed to Debcon as a bidder for a public works construction project. As a result, Debcon argues that Delta may be found liable to Debcon for its lost profits of $200,000 and other damages caused by Delta's negligence.

¶27 Delta contends that it owed a duty only to the City in its performance of the contract to evaluate the submitted bids and make a recommendation as to which contractor was the "lowest responsible bidder." Delta argues that it owed no duty to Debcon, as a stranger to that contract, and therefore Debcon cannot assert a claim for negligence as a matter of law.

¶28 We agree with Debcon that the law concerning the imposition of a duty under these circumstances is, indeed, well-settled in Montana. We agree with Delta, however, that Debcon has failed to present the well-settled controlling law for our adjudication of this matter.

¶29 As acknowledged by the District Court and the parties here, the existence of a legal duty in any given case is a question of law for the court to decide. *See Dobrocke*, ¶ 28; *Hatch v. State Dept. of Highways* (1994), 269 Mont. 188, 195, 887 P.2d 729, 733 (citation omitted). Absent a duty, no breach of duty can be established and no negligence action can be maintained. *See Hatch*, 269 Mont. at 195, 887 P.2d at 734 (citation omitted).

¶30 The District Court concluded that in Montana, "an unsuccessful bidder lacks standing to bring a negligence claim for failure to obtain the award of a public works contract." As authority, the court relied on *Baker v. State* (1985), 218 Mont. 235, 707 P.2d 20. As to any duty owed by Delta in particular, the court determined that Debcon's negligence claim against Delta "also must fail as a matter of law" and Delta "has no duty to Debcon." The court reasoned that because Debcon cannot assert that such a duty exists as to the City,

under *Baker*, then "Debcon cannot assert then that such duty exists with Delta when there is no underlying right to assert this duty against City."

¶31 Generally, we agree with the District Court's legal conclusions.

¶32 In contracting with the City to fulfill, essentially, the same function as provided by state law that would otherwise be performed by the City itself, it is fundamental that the same legal standards apply to Delta's contractual performance. The contract between the City and Delta provided that "all applicable federal and state statutes and regulations are incorporated into this Contract by this reference and are binding upon the ENGINEER." Further, the specifications presented to bidders expressly provided that the contract would be awarded "in conformance with the laws of the State of Montana." *See generally* § 7-5-4301(1), MCA (providing that a city or town council has the power to "make any and all contracts necessary to carry into effect the powers granted by this code and to provide for the manner of executing the same"); § 1-3-204, MCA (stating general maxim that a law established for a public reason cannot be contravened by a private agreement).

¶33 Accordingly, we conclude that should the City owe hopeful public works contract bidders a duty of care in the competitive bidding process provided by state law, or otherwise at common law, then Delta would owe bidders this same duty in fulfilling its contractual obligations to assist the City in assessing and awarding a public works contract.

¶34 Thus, we initially observe that Debcon chose to go far afield in combing our case law in hopes of crafting an applicable common law duty of care when it could have--or, rather, should have--looked no farther than the clear line of authority that has addressed public works contracts for more than a century in Montana, and to which the District Court alluded. In this light, we further observe that Debcon's argument is largely premised on the fallacy that the lowest monetary bidder necessarily must be awarded such a contract as the "lowest responsible bidder." This fallacy is clearly contradicted by controlling statutes, case law, as well as the bid documents themselves, as revealed by the following analysis.

¶35 This particular area of the law was addressed by this Court not long after the governing legislation, which is noticeably absent from Appellant's brief, was codified in 1907. Under what is now § 7-5-4302, MCA (originally codified in 1907 under § 3278, Rev.C; and then under § 5070, RCM, and § 11-1202, RCM), all contracts awarded by local governments (cities and towns) for construction, repair, or maintenance in excess of

$25,000 "must be let to the lowest responsible bidder after advertisement for bids." Further, a city council "may reject any bids and readvertise as provided in this section." Although often amended, particularly as to the dollar amount, the foregoing statutory rules have not changed. Accordingly, the line of authority commencing with our decision in *O'Brien v. Drinkenberg* (1910), 41 Mont. 538, 111 P. 137, has produced a set of legal principles that will guide our decision here today-- although they do not appear in Debcon's brief to this Court.

¶36 Notably, the aggrieved party in *O'Brien* was a taxpayer who sought an injunction to restrain the town of Hamilton from constructing paved sidewalks in place of board sidewalks. This Court declared that the "manifest purpose in requiring the contract be let to the lowest responsible bidder is to protect the state against imposition and extortion." *O'Brien*, 41 Mont. at 549, 111 P. at 141. In reversing the judgment of the district court, and ordering dismissal of the plaintiff's complaint, this Court concluded that "to successfully attack such proceeding, plaintiff would have to show that the contract was not let to the lowest responsible bidder, that there was not any opportunity afforded for competitive bidding, or that there was collusion or bad faith on the part of the council, or such gross mistake as to preclude the exercise of sound judgment, and in this he failed." *O'Brien*, 41 Mont. at 550, 111 P. at 141.

¶37 In 1912, in an action for mandamus to compel a county board to rescind and set aside a contract and award it to the actual lowest monetary bidder, this Court declared that the provision of law for "letting contracts of this character to the lowest bidder is for the benefit of the public, and does not confer any right upon the lowest bidder as such." *State ex rel. Stuewe v. Hindson* (1912), 44 Mont. 429, 437-38, 120 P. 485, 487 (stating that the only standing which Stuewe had in the courts in this proceeding was as a taxpayer, and not as an unsuccessful bidder, in action where contract "for the care of the poor, sick, and infirm of the county" went to the highest monetary bidder). *See also Ford v. City of Great Falls* (1912), 46 Mont. 292, 309, 127 P. 1004, 1009 (stating that in an action for an injunction brought by a taxpayer the statutory provision requiring competitive bidding is "designed to prevent favoritism and to secure to the public the best possible return for the expenditure of the funds"); *Cooper v. City of Bozeman* (1917), 54 Mont. 277, 169 P. 801 (action brought by taxpayer for injunction to restrain the city of Bozeman from drawing warrants or levying taxes to pay for certain improvements); *Montana-Dakota Utilities Co. v. City of Havre* (1939), 109 Mont. 164, 94 P.2d 660 (action for injunction brought by taxpayer).

¶38 In 1941, in a fairly lengthy discussion, this Court again emphasized that the public works statute requiring that contracts be "let to the lowest responsible bidder" was enacted "for the protection of public interests and must be complied with by the municipal authorities for the benefit of the public." *Koich v. Cvar* (1941), 111 Mont. 463, 465, 110 P.2d 964, 965. In *Koich*, a taxpayer sought to enjoin the East Helena city council from proceeding with the execution of a contract, claiming that the purchase of fire fighting equipment did not go to the actual lowest bidder.

¶39 This Court declared that it was settled law that the phrase "lowest responsible bidder"does not merely mean the lowest bidder whose pecuniary ability to perform the contract is deemed the best, but the bidder who is "most likely in regard to skill, ability and integrity to do faithful, conscientious work, and promptly fulfill the contract according to its letter and spirit." *Koich*, 111 Mont. at 466, 110 P.2d at 965 (citations omitted). *See also State ex rel. Eaves v. Rickards* (1895), 16 Mont. 145, 151-52, 40 P. 210, 212 (in addressing state publishing contract that statute required must go to "lowest responsible bidder," the Court determined that the term "responsible" did not refer to pecuniary ability only and included "judgment, skill, ability, capacity, and integrity;" and, therefore, contract need not go to the lowest bidder who tendered a sufficient bond).

¶40 This Court further declared in *Koich* that in exercising its discretion to select the lowest responsible bidder, "the officers in whom the power is vested must determine the fact, and such determination cannot be set aside unless the action of the tribunal is arbitrary, oppressive or fraudulent." *Koich*, 111 Mont. at 466, 110 P.2d at 965 (citations omitted). Ultimately, we concluded that in "the absence of any showing of bad faith, fraud, or corruption, we cannot say, as a matter of law, that the city council abused its discretion." *Koich*, 111 Mont. at 470-71, 110 P.2d at 967.

¶41 In 1973, this Court again recognized the rule that "an unsuccessful bidder has no standing in mandamus *or otherwise* to control the discretion of the city council in awarding a contract to the lowest responsible bidder." *State ex rel. Sletten Const. Co. v. City of Great Falls* (1973), 163 Mont. 307, 516 P.2d 1149 (emphasis added).

¶42 The statutes at issue in *Baker v. State* (1985), 218 Mont. 235, 707 P.2d 20, which is the decision relied on by the District Court here, were those under Title 18, which, similar to § 7-5-4302, MCA, govern the bid process of State agencies. Under § 18-2-103(1)(c), MCA, for example, construction contracts with the State must be awarded to the "lowest qualified bidder considering conformity with specifications and terms and reasonableness

of the bid amount." More generally, under § 18-1-102(1), MCA, a State agency must award construction contracts to the "lowest responsible bidder."

¶43 Unlike the foregoing cases, however, the "disappointed bidder," Baker Construction, sought to have not only the contract awarded to its competitor declared illegal, and in turn have the contract awarded to it as the actual "lowest responsible bidder," it also sought recovery of lost profits, bidding costs, litigation costs and attorney's fees. *See Baker*, 218 Mont. at 237, 707 P.2d at 22. After reciting the rule that standing is afforded only to taxpayers, not unsuccessful bidders, this Court determined that "Baker failed to allege . . . standing as a taxpayer." *Baker*, 218 Mont. at 240, 707 P.2d 23. We also relied on *Koich* for the proposition that even had standing been established, "in the absence of any showing of bad faith, fraud, or corruption of the Department, the exercise of discretion will not be disturbed." *Baker*, 218 Mont. at 240, 707 P.2d 24. This Court also observed that the construction company was barred from relief as a taxpayer with standing due to its own laches--meaning Baker had waited until the contract had been awarded to another party, which had commenced performance. *See also Heritage Comm. Contractors, Inc. v. City of Helena* (1995), 272 Mont. 90, 899 P.2d 1076 (concluding that Appellant, in seeking damages, had no standing to object to City's discretionary ruling and had presented no evidence that City's decision was made in bad faith).

¶44 In synthesizing and gleaning the rules from the foregoing, we observe that under the facts here, a claim for relief accrues under the following conditions: (1) the plaintiff must timely assert its claim as an aggrieved taxpayer; (2) the claim must seek a remedy--such as an injunction, a writ of mandamus, or a declaratory judgment--that will protect the rights of the aggrieved taxpayer from the potential harm that will occur; and (3) the plaintiff must then show that the process by which the public works contract was awarded resulted from an abuse of discretion--i.e., the municipality's discretionary decision was tainted by an act of bad faith, fraud, corruption, or was otherwise arbitrary in some manner. This latter showing naturally flows to parties in contractual privity with the municipality, such as Delta in the matter at bar, that perform services associated with the bidding process. Delta is correct, of course, that it owed a duty to the City to exercise ordinary professional skill and competence in fulfilling its contractual obligations. We conclude, however, that Delta also owed a duty of care to the taxpayers pursuant to the foregoing--a duty which its argument failed to recognize.

¶45 As our analysis of this legal issue indicates, we are by no means breaking new common law ground in this matter. Our decision here, in fact, accords with a majority of

jurisdictions that have ruled on the issue and have not allowed an aggrieved low bidder to recover lost profits or other expectancy damages under a negligence theory. *See, e.g., City of Scottsdale v. Deem* (Ariz.Ct.App. 1976), 556 P.2d 328, 330; *Rubino v. Lolli* (Cal.Ct. App. 1970), 89 Cal.Rptr. 320, 321-22; *L & M Enterprises, Inc. v. City of Golden* (Colo.Ct. App. 1993), 852 P.2d 1337, 1339; *Sutter Bros. Constr. Co., Inc. v. City of Leavenworth* (Kan. 1985), 708 P.2d 190, 195-96; *Gulf Oil Corp. v. Clark County* (Nev. 1978), 575 P.2d 1332, 1333-34; *Becker Elec., Inc. v. City of Bismarck* (N.D. 1991), 469 N.W.2d 159, 160; *Ralph L. Wadsworth Const. Co., Inc. v. Salt Lake County* (Utah 1991), 818 P.2d 600, 602; *Mottner v. Town of Mercer Island* (Wash. 1969), 452 P.2d 750, 752-53. *See also* 65 A.L. R.4th 93, *Public Contracts: Low Bidder's Monetary Relief Against State or Local Agency for Nonaward of Contract* (1988).

¶46 Therefore, in light of the foregoing, we conclude that Debcon's contention that a new duty of care should be constructed from whole cloth pursuant to the general principles set forth in *Estate of Strever v. Cline* (1996), 278 Mont. 165, 924 P.2d 666, cannot withstand the overwhelming weight of authority contrary to its position. *See Estate of Strever*, 278 Mont. at 173, 924 P.2d at 670 (providing that the existence of a duty of care depends upon the foreseeability of the risk and upon a weighing of policy considerations for and against the imposition of liability, and setting forth a four-part standard) (citation omitted).

¶47 Accordingly, we conclude that the rights and remedies of parties involved in bids for public works contracts have been thoroughly resolved, as a matter of law, by this Court-- and, notably, have not been substantively addressed let alone distinguished by Debcon here. In particular, Debcon's argument that the tax paying public would somehow benefit by permitting individual claims for lost profit damages every time a bidder on a public works contract has cause to believe a negligent or nefarious mistake was made in selecting the "lowest responsible bidder" cannot be sustained under the policies established in *O'Brien* and its progeny. Because such damages benefit only the interest of an individual bidder, an award of damages for lost profits in such instances is contrary to the very public interest that the competitive bidding laws were designed to protect. *See State ex rel. Stuewe*, 44 Mont. at 437-38, 120 P. at 487; *Baker*, 218 Mont. at 240, 707 P.2d 23.

¶48 What this cause amounts to, therefore, is a claim for relief upon which relief cannot, as a matter of law, be granted. We hold therefore that the District Court correctly determined that, under the specific facts here, Delta, serving as a project engineer for the City, did not owe Debcon, as a failed bidder, a duty of care in its handling of the public works contract bidding process under the theory of negligence pursued throughout the

litigation of this matter.

¶49 Debcon also claims that the District Court erred, as a matter of law, in relying on this Court's decision in *Jim's Excavating Serv., Inc. v. HKM Assoc.* (1994), 265 Mont. 494, 878 P.2d 248. Debcon claims, in fact, that our decision in *Jim's Excavating* favors its position.

¶50 The District Court determined that the only duty of care that could be applied to such circumstances is a version of negligent misrepresentation addressed by this Court in *Jim's Excavating*. The court concluded, however, that the facts presented did not meet the *Jim's Excavating* criteria for establishing that Delta owed a duty of care to Debcon in its handling of the bid process.

¶51 On the whole, we agree with Delta that this Court's decision in *Jim's Excavating Serv., Inc. v. HKM Assoc.* is inapposite to the issue presented here. The duty discussed in that case, as derived from the Restatement (Second) of Torts, § 552 (information negligently supplied for the guidance of others), may apply where a bidding party is awarded a contract. In turn, the successful bidding party fails to sufficiently perform under the contract specifications established by a project engineer or architect, which leads, generally, to the party suffering demonstrable pecuniary damages. The aggrieved contractor may look to false information "negligently" supplied in the contract specifications, although the party was not in privity with the alleged negligent party. Thus, the contractor alleges that but for the project engineer's or architect's negligence in providing incorrect information in the bid specifications, it would not have failed in its performance under its contract, and in turn would not have been damaged. *See generally Jim's Excavating*, 265 Mont. at 504-505, 878 P.2d at 254-55.

¶52 Clearly, the foregoing is distinguishable from the claim here. Debcon was not awarded the contract, it therefore suffered no damages as a result of its failed performance that could be attributed to any reliance on any information negligently supplied by Delta. The District Court was therefore correct in its determination that our decision in *Jim's Excavating* did not serve to impose a duty of care on Delta that was owed to Debcon as a failed bidder for a public works construction contract.

¶53 Finally, in light of the foregoing conclusions reached under this issue, we need not address Delta's claim that its recommendations to the City were privileged, and therefore Delta should be exempt from liability.

## *Issue 2.*

> *Did the District Court correctly conclude that as a matter of law Debcon could not assert a bad faith claim against Delta, and therefore the denial of Debcon's motion to amend its complaint was proper?*

¶54 The District Court addressed and rejected the bad faith claim that Debcon attempted to include in its May 7, 1999 amended complaint. Although the District Court observed that the proposed amended complaint was filed "well beyond the [March 16, 1999] scheduling deadline for amending," the court nevertheless addressed the issue of bad faith.

¶55 We agree with Delta that the motion to amend was untimely, but nevertheless will address the legal conclusion reached by the District Court.

¶56 In correctly determining that Debcon had not established a necessary "special relationship" with Delta, the court misconstrued the rule set forth by this Court in *Story v. City of Bozeman* (1990), 242 Mont. 436, 791 P.2d 767. In that decision we declared that "the Uniform Commercial Code model should be extended to cover all *contracts* and that the bad faith tort should be used only when the parties have a special relationship." *Story*, 242 Mont. at 450, 791 P.2d at 775 (emphasis added).

¶57 Generally, the tort of bad faith arises only between contracting parties, and is nothing more than an implied term in all contracts--that is, to act in good faith and deal fairly in the performance of the contract. For example, one of the essential elements of the necessary "special relationship" is that "the *contract* must be such that the parties are in inherently unequal bargaining positions." *Simmons Oil Corp. v. Holly Corp.* (1993), 258 Mont. 79, 89-90, 852 P.2d 523, 529 (emphasis added). *See also* § 28-1-211, MCA (the conduct required by the implied covenant of good faith and fair dealing is "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade").

¶58 The only exception to the foregoing rule is where there is an express statutory provision providing for a bad faith claim. *See Grenz v. Medical Management Northwest, Inc.* (1991), 250 Mont. 58, 63, 817 P.2d 1151, 1155 (stating that absent a specific statutory provision providing for a bad faith claim, or a contract between the parties involving a special relationship as described in *Story*, "no cause of action will lie"). *See also Brewington v. Employers Fire Ins. Co.*, 1999 MT 312, ¶ 19, 297 Mont. 243, ¶ 19, 992 P.2d 237, ¶ 19 (holding that a third-party claimant was not prohibited from pleading the

common law tort of bad faith against a workers compensation insurer, pursuant to "good faith" requirement set forth under § 33-18-201(6), MCA, in conjunction with § 33-18-242, MCA).

¶59 The District Court misstated, therefore, that in order to sustain a claim of bad faith, Debcon must first establish that it enjoyed a special relationship with Delta. Rather, the District Court should have simply declared that in the absence of contract or an express statutory provision, the claim of bad faith does not lie. It is undisputed that Debcon did not enjoy contractual privity with Delta. Further, Debcon has failed to set forth an express statutory provision that would sustain a bad faith claim--for a good reason. A statutory provision applicable to the parties and the factual circumstances here simply does not exist.

¶60 Accordingly, the District Court's order denying Debcon's motion to amend is affirmed and the order granting summary judgment in favor of Delta and denying Debcon's motion for summary judgment is affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER