JUSTICE BAKER,
dissenting.
¶64 In order to withstand a motion for summary judgment in a negligence action, the plaintiff must establish that the defendant owed her a legal duty. Debcon, Inc. v. City of Glasgow, 2001 MT 124, ¶ 29, 305 Mont. 391, 28 P.3d 478. Public and private defendants are dissimilarly situated for purposes of establishing legal duty. Unlike private parties, government touches nearly all aspects of organized life, and we expect the government to act to serve the community as a whole and not individual interests. “Juries and courts are ill-equipped to judge ‘considered legislative-executive decisions’ as to how particular community resources should be or should have been allocated to protect individual members of the public.” Morgan v. Dist. of Columbia, 468 A.2d 1306, 1311-12 (D.C. Cir. 1983) (citation omitted). If the government does not fulfill its duties, the law provides avenues of recourse outside the courtroom. In light of the differences between public and private action, unmitigated negligence liability has the capacity to expose governments to ceaseless litigation and interfere with government discretion about how best to use limited resources to benefit the public. Prosser, ¶ 18. The public duty doctrine exists in recognition of these dangers and differences.
¶65 The public duty doctrine holds that an absolute duty that the government owes to the public at large does not establish a legal duty, does not expose the government to negligence liability, and does not provide a plaintiff the right to maintain a negligence action. Nelson, ¶ 21. Unless the government is liable under a generally applicable principle of law, such as premises liability, Gatlin-Johnson, ¶¶ 17-18, our law is well-established that liability may be found only when the government has established a special relationship with the plaintiff — whether through specific protective statutes, specific protective actions, actions that reasonably induce detrimental reliance, or through a custodial relationship with the plaintiff or a third person. *210 Nelson, ¶ 22.
¶66 In Prosser, we considered the applicability of the public duty doctrine to land use decisions — specifically, approval of a change in use of a commercial building and enforcement of a condition to that approval. Prosser, ¶ 12. These decisions were made under local municipal codes intended to benefit the general public. Prosser, ¶ 23. We held that the government owed no legal duly to the plaintiffs in that case, in part because to hold otherwise would force the government “either to deny all but the most benign development plans or face innumerable lawsuits.” Prosser, ¶ 27.
¶67 The case before us presents the question of the applicability of the public duly doctrine to another land use decision intended to promote the general welfare — approval of a planned unit development. See Columbia Falls Municipal Code at 17.04.030. As we stated in GatlinJohnson, Prosser recognizes the public duty doctrine’s applicability to government actions involving “land use decisions by a local government body.” Gatlin-Johnson, ¶ 15. The Court’s decision today, holding that the public duly doctrine does not apply to a land use decision by a local government body, conflicts directly with Prosser.
¶68 The Court appears to find something novel or unique about the City’s use of a planned unit development as a land use regulation tool. But planned unit developments, like zoning amendments and variances, are normal land use regulation tools, their approvals are matters committed to the judgment of local officials, and they are used to further the welfare of the general public. Additionally, use of a planned unit development may be appropriate in situations in which an amendment and variance is not: planned unit developments can serve public goals by increasing flexibility, creativity, variety, and efficient use of open space in land development projects. See 3 Josh Martinez, Local Government Law § 16:17, at 16-44 through 45 (2nd ed. 2014). They can achieve this because, by the very nature of a planned unit development, a “local government exercises more precise control than would otherwise be theoretically possible when acting upon a request for a map or text amendment.” Local Government Law § 16:17, at 16-44 through 45.
¶69 The Court’s apparent concern with this greater level of control, Opinion, ¶¶ 43-44, misses the point that such control is inherent in planned unit developments, which are simply tools for land use regulation to serve the general welfare. Land use regulation is exclusively a governmental function and exclusively a creature of statute. See generally § 76-2-101 through -340, MCA. A private actor *211 does not undertake land use regulation, so there is no principle of law applying generally to both the government and private actors that imposes a legal duty on the government during land use regulation.
¶70 The Court’s focus on the City’s “active involve[ment]” in this case overstates the evidence and overlooks the parallels with Prosser. Like Kent, the Prosser plaintiffs claimed that a government defendant facilitated a harm-causing instrumentality. Prosser concerned the City of Hamilton’s approval of the change in property use of a fast-food restaurant to a casino and lounge. Prosser, ¶¶ 5-6. Before the approval, neighbors to the property raised their concerns (mostly regarding the noise and light pollution that the change would portend) with the city. Nonetheless, the city approved the building modification on the condition that it “comply with all federal, state and local laws.” The casino was built. Prosser, ¶ 6. The neighbors then sued the city for its role in promoting and facilitating the very problems that the city had considered in first approving the project (noise and light pollution) and for fading to enforce its condition to the project’s approval. Prosser, ¶¶ 7-8.
¶71 The Court apparently concludes that, unlike in this case, the city’s involvement in Prosser was not “active involve[ment]” because it did not “voluntarily undertake oversight of the construction, nor did it actively participate in the design and location of the remodeled building.” Opinion, ¶ 43. The harm-causing instrumentality in Prosser was not the design and construction of the building; it was the use of the land for a casino. The City of Hamilton’s “active involve[ment]” in approving that use directly facilitated the instrument of harm. Yet Hamilton was protected by the public duty doctrine because its action was taken pursuant to state law and city ordinances that were enacted “to benefit the general public.” Prosser, ¶ 23.
¶72 The harm-causing instrumentality in this case is the grade of the trail. Columbia Falls was not “actively involved” with determining the trail’s grade. The City’s interest in the portion of the trail where the accident occurred was simply that it connect properties that otherwise were not adjacent to a sidewalk. Touching a sidewalk is normally a requirement to development in Columbia Falls, but, at the developer’s proposal, the City waived that requirement so long as a private trail system connected properties without a sidewalk. In fact, the City Manager specifically told Cedar Pointe’s developer that that the City had no expectation regarding the slope of the private walk path. Opinion, ¶ 8. The District Court found that the City appeared “to have taken an active part in deciding the location and layout of the trail *212 system.” (Emphasis added.) What the City did in this case — requiring, as a condition to waiving the requirement that sidewalks connect all properties, that a private path connect properties, and having government employees walk the path to determine that it fulfilled that specific condition — did not make the City the private path’s engineer, responsible for creation of the path’s slope.
¶73 It is not entirely accurate to say, as the Court suggests, that “no one in Prosser argued that the public duty doctrine did not apply.” Opinion, ¶ 42. In fact, though framed differently, the plaintiffs in Prosser offered arguments nearly identical to Kent’s that the public duty doctrine should not apply to a city’s allegedly negligent exercise of its statutory land use authority. While Kent frames her argument in terms of a generally applicable principle of law exempting the doctrine’s application, the Prosser plaintiffs framed their arguments in terms of a special duty exempting the doctrine’s application.[1] But, in light of the reasons for the public duty doctrine, the land use regulation exemplified in the City’s oversight of a planned unit development is precisely the type of context in which the public duty doctrine does apply. Development of real properly almost always requires a local government’s oversight, regulation, and either tacit or explicit approval. Today’s decision, which situates local governments as the insurers of private developers, thus risks innumerable lawsuits and burdening the discretion of governments to use their limited resources to advance the general welfare.
¶74 The Court also places special “focus” on our opinion in GatlinJohnson, Opinion, ¶ 22, concluding that it was error for the District Court to decline “to reconsider its analysis” after that case was decided, Opinion, ¶ 41. While acknowledging that Gatlin-Johnson did not create new law, Opinion, ¶ 39, the Court relies on Gatlin-Johnson’s recognition that the public duly doctrine “does not apply where the government’s duly is defined by other generally applicable principles of law.” Gatlin-Johnson, ¶ 17. But, as the Court observes, GatlinJohnson simply stated the terms of the public duty doctrine consistent with how we had stated them in the past: the doctrine “applies only if *213 the public entity truly has a duty to the public at large.” Gatlin-Johnson, ¶ 17.
¶75 In Gatlin-Johnson, we identified a single generally applicable principle of law that imposes a legal duty on government and renders the public duty doctrine inapplicable: premises liability. GatlinJohnson, ¶¶ 18-20. That conclusion was grounded in numerous Montana cases that did not apply the public duty doctrine in negligence actions stating a claim for premises liability against a government entity. Gatlin-Johnson, ¶¶ 18-19. We explained that premises liability is a generally applicable principle of law because, with premises liability, “the government entity, if a private person, would be liable to the claimant for the damages under the laws of the state.” Gatlin-Johnson, ¶ 19 (quoting § 2-9-101(1), MCA). Our recognition that the government often has a legal duty outside the public duty doctrine when acting as a landowner was nothing new. See Cooley on Torts § 450, at 238 (4th ed. 1932) (noting that when municipal corporations act as “artificial persons” owning and managing property, “they are chargeable with all the duties and obligations of other owners of property, and must respond for creating or suffering nuisances under the same rules which govern the responsibility of natural persons”). Clearly, however, premises liability is not the theory on which the Court relies to impose a duty on the City in this case. After all, the City did not own, maintain, control, design, engineer, or construct the path where the tragic accident in this case occurred. The District Court accordingly concluded that premises liability did not apply, and Kent has not appealed that conclusion.
¶76 The Court relies in part on the Rhode Island case Verity, Opinion ¶ 51, but Verity does not purport to state a generally applicable principle of law. Rather, the Rhode Island court in Verity recognized an exception to the public duty doctrine when the government “has created a circumstance that forces an individual into a position of peril and subsequently chooses not to remedy the situation.” Verity, 585 A.2d at 67 (“abrogat[ing]” the public duty doctrine in Rhode Island when governmental negligence is so “extreme” or “egregious” that “to bar suit... would effectively excuseQ governmental employees from remedying perilous situations that they themselves created”); see Berman v. Sitrin, 991 A.2d 1038, 1044 n.7 (R.1.2010) (describing Verity as recognizing an “exception” to the public duty doctrine “when the governmental entity acts in an egregious manner”); Haley v. Lincoln, 611 A.2d 845, 849 (R.I. 1992) (describing the “ ‘egregious conduct’ exception to the public duty doctrine first delineated by this court in *214 Verity”). The exception recognized in Verity is particular to government actors; it is therefore not generally applicable.[2]
¶77 The Court states nonetheless that the “same result” is compelled in this case as in Verity because “the City was actively involved in the design of the path, knew of its dangerous grade, had the statutory authority to compel a modification, and yet exercised its statutory and contractual authority to approve it.” Opinion, ¶ 52. Once again, this “statutory authority” derives not from a principle of law generally applicable to public and private actors alike, but from the City’s role in land use regulation. The Court concludes that, by its active involvement under the guise of this authority, the City voluntarily assumed a legal duty to regulate the slope of the private path. Opinion, ¶ 50. In contrast to a gratuitous service, however, the City acted pursuant to statute and under the “more precise” exercise of control inherent in the review of a planned unit development. Local Government Law § 16:17, at 16-44 through 45. Compare Vesel, 110 Mont, at 92, 100 P.2d at 80 (applying duty of reasonable care to gratuitous service rendered “in the absence of a statutory or contractual obligation”). Put simply, the City was not acting as a “good Samaritan.” See Nichols v. Block, 656 F. Supp. 1436, 1446 (D. Mont. 1987).
¶78 Without expressly saying so, the Court suggests a new exception to the public duty doctrine where the government engages in affirmative acts that give rise to the dangerous circumstance causing a plaintiffs injury. Opinion, ¶¶ 46-49. This concept is not new to the law. As stated by Judge Cardozo:
If conduct has gone forward to such a stage that inaction would commonly result, not negatively merely in withholding a benefit, but positively or actively in working an injury, there exists a relation out of which arises a duty to go forward.
H.R. Moch Co., Inc. v. Rensselaer Water Co., 247 N.Y. 160, 167 (1928). *215 See also Suit v. Scandrett, 119 Mont. 570, 573, 178 P.2d 405, 407 (1947). The Utah Supreme Court recently embraced this theory, ruling that the public duty doctrine “does not immunize the State from liability for affirmative acts that harm a plaintiff.” Instead, the doctrine “is limited to situations where a plaintiff seeks to impose liability for a duty to protect the general public from external harms.” Cope, ¶ 2. The Utah court distinguished situations where the government actor does not create the plaintiffs peril — in which the public duty doctrine would shield the government from liability — from those in which “the affirmative acts of a public employee actually cause the harm” and the public duty doctrine does not apply. Cope, ¶ 24. See also Cooley on Torts, § 450, at 241-42 (noting that a city is not liable for failure to abate a nuisance, “although it may be held liable for a nuisance created and maintained by it”).
¶79 Kent has done nothing to show that the Ciiy created the dangerous grade on the walk path.[3] The Utah court’s analysis in Cope explained that “governmental actors are also not liable for a defective effort to perform a public duty to ameliorate an externally caused harm.” Cope, ¶ 24 n.5 (citing as an example a case in which the Cify of Salt Lake was shielded by the public duly doctrine when it took various measures to combat flooding that proved inadequate to protect the plaintiffs property). Therefore, even under an “affirmative acts” exception, Kent’s allegations against the City fail. In both Verity and Cope, the government adiar created the dangerous condition. Here, the Court seems to recognize that the City did not create the slope when it states, “It is apparent” that the “City did not require the owner, the contractors, or engineers” to lessen the grade of the private path. Opinion, ¶ 46. No party argues in this case that the City created the peril that caused Casey Kent’s iiy'ury.
¶80 Absent facts showing that the City “launched a force or instrument of [potential] harm,” Opinion, ¶ 48 (quoting Cope, ¶ 36), the concepts on which the Court relies already are subsumed in the established exceptions to the public duty doctrine. Both Kent and the Court have not argued and have implicitly conceded that the City’s acts or omissions do not bring this case within any of the recognized *216 exceptions.
¶81 With respect to the City’s “statutory duty,” our case law makes clear that the public duty doctrine applies to a government entity under circumstances where a statute imposes a duty to the public at large. For instance, in Nelson v. State, 2008 MT 336, 346 Mont. 206, 195 P.3d 293 (Doris Nelson), the plaintiff alleged “that the State negligently and in violation of statute” issued a medical license to a doctor whose alleged malpractice played a role in the death of the plaintiff’s decedent. Doris Nelson, ¶¶ 9-10. We applied the public duty doctrine. Doris Nelson, ¶ 50. Similarly, in Prosser, where the government defendant had the statutory authority to reject the proposed change in use, we applied the public duty doctrine. Prosser, ¶ 22. If neither the statutory authority to deny a doctor a license nor the statutory authority to deny a land use change creates a legal duty outside the public duty doctrine, the statutory authority to reject a planned unit development does not, either.
¶82 Further, it is unquestionable that the statutes in this case do not meet the special relationship exception for statutes intended to protect from harm a specific class of persons of which the plaintiff is a member. The City approved the planned unit development under the statutory authority provided to it by the state “[flor the purpose of promoting health, safety, morals, or the general welfare of the community.” Section 76-2-301, MCA. The Court seems to suggest that the City negligently enforced its municipal ordinance disallowing “slopes equal to or greater than twenty-five percent subsidence,” but this ordinance’s purpose is to protect the “general welfare” — not private individuals of which the plaintiff is a member. Opinion, ¶ 46 (citing Columbia Falls Municipal Code 17.14.030).[4] A private person would not be “liable to the claimant for the damages under the laws of the state,” GatlinJohnson, ¶ 19, for failing to exercise the statutory authority under which the City approved the planned unit development. Nor do Kent’s allegations meet the exception for application of the public duty doctrine when the government has taken affirmative steps to protect a specific individual from harm. See Nelson, ¶ 38.
¶83 In the acknowledged absence of the inapplicability of any exception to the public duty doctrine, it appears that the only basis for imposing a legal duty on the City in this case is a general duty of *217 ordinaiy care, applying to the City’s actions enforcing its land use code provisions. Opinion, ¶ 50. But imposing a legal duty on this basis does not comport with precedent in which we have applied the public duty doctrine to government actions enforcing statutes that a governmental entity is charged with administering. For instance, in Gonzalez, the plaintiff claimed that police officers acted negligently in responding to an emergency call (leading to her rape), and negligently arrested her at the scene of the crime (causing her severe emotional distress). Gonzalez, ¶ 19. The plaintiff argued that she was a foreseeable victim of emergency response acts exercised without due care. See Brief for Appellant, Gonzalez v. City of Bozeman, S. Ct. No. DA 08-0566, at pg. 11 (“The question of whether the officers owed [the plaintiff] a duty of care also depends upon the foreseeability that she would be injured by their conduct.”). Yet we analyzed this case under the public duty doctrine and its exceptions. Gonzalez, ¶ 20.
¶84 We have proceeded similarly in many other cases in which the government was alleged to have been negligent in enforcing or following pertinent statutes, and found a legal duty only where a special relationship brought the case within an exception to the public duty doctrine. See Eklund v. Trost, 2006 MT 333, ¶ 32, 335 Mont. 112, 151 P.3d 870 (not applying a general duty of due care to police conduct during a high speed chase and instead imposing a duty only after finding a special relationship); Orr v. State, 2004 MT 354, ¶ 47, 324 Mont 391, 106 P.3d 100 (not applying a general duty of due care to state enforcement of mine regulations and instead imposing a duty only after finding a special relationship); Massee v. Thompson, 2004 MT 121, ¶ 44, 321 Mont. 210, 90 P.3d 394 (not applying a general duty of due care to sheriff’s deputies’ enforcement of a domestic abuse statute and instead imposing a duty only after finding a special relationship); Nelson, ¶ 40, (not applying a general duty of due care to a police officer’s failure to restrain a drunk driver and instead imposing a duty only after finding a special relationship). The Court does not consider these cases.
¶85 Our law on when a government defendant owes a duty in a negligence suit is not and need not be as baffling as today’s decision makes it. Consistent with our precedent, the first step in the Court’s analysis should be to ask whether the City truly owes a duty to the public at large in executing its authority under the land use regulation statutes and ordinances. Consistent with Prosser’s conclusion and Gatlin-Johnson’s affirmation that the public duty doctrine applies to land use decisions, we should answer that question in the affirmative. *218 We should next ask whether Kent has identified a generally applicable principle of law that otherwise would impose a legal duty on the City in this case. Kent has failed to identify such a principle. Then, we should examine the special relationship exceptions to the public duty doctrine. Kent has not argued that any special relationship exception applies. Accordingly, I would affirm the District Court’s order. I dissent from the Court’s contrary decision.
JUSTICES RICE and McKINNON join in the dissenting Opinion of JUSTICE BAKER.

 See, e.g., Brief of Plaintiffs and Appellants, Prosser v. Kennedy Enter., Inc., S. Ct. No. DA 06-0073, at 7 (“There exists a ‘special relationship’ between the Occupants and the City which has given rise to a special duty that is more particular than the duty owed to the public at large which prevents the application of the public doctrine to Occupants in this case.”); at 13 (“The special duty owed by the City to the Occupants prevents the application of the public duty doctrine to bar Occupant’s claims against the City in this case.”) (original emphases removed and new emphases added).

 Although not explicitly stated in Verity, it also appears that the defendant government agency in that case maintained and controlled the property on which the danger that caused the plaintiffs injury was found. See Verity, 585 A.2d at 65-67. Rhode Island, like Montana, recognizes an exception when the governmental entity acts as a landowner. Adams v. R.I. Dep’t of Corr., 973 A.2d 542, 546 (R.1.2009); see Gatlin-Johnson, ¶ 20; Kaiser v. Town of Whitehall, 221 Mont. 322, 325, 718 P.2d 1341, 1343 (1986) (imposing on a government defendant a legal duty owed to those “travelling on a public sidewalk”). But the case on appeal is not a premise liability case. The City did not own, maintain, or control the path. The District Court accordingly determined that premises liability does not apply in this case. Kent has not appealed that determination.

 Though Kent pleaded a claim for willful or wanton misconduct, the District Court rejected that claim as “merely a species of negligence, utilized in a premises liability action.” Kent has not appealed that ruling. In any event, Kent’s claim for willful or wanton misconduct does not allege that an affirmative act by the City created the peril that caused the accident in this case.

 The Court does not explain why this municipal ordinance matters, considering the facts show that the slope of the path where the accident occurred was under twenty-five percent. Opinion, ¶ 1.